# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-10615

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JUAN CASTILLO-RIVERA,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and JOLLY, HIGGINBOTHAM, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge, joined by JOLLY, HIGGINBOTHAM, JONES, OWEN, ELROD, and HAYNES, Circuit Judges, in full; SOUTHWICK, Circuit Judge, joining in all except for footnote 1; HIGGINSON, Circuit Judge, joining in Part III.B only:

Juan Castillo-Rivera was convicted of illegal reentry under 8 U.S.C. § 1326. He received an 8-level enhancement of his sentence pursuant to U.S.S.G. § 2L1.2(b)(1)(C), for being "previously . . . deported . . . after conviction for an aggravated felony." The notes to Section 2L1.2 explain that, "[f]or purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in 8 U.S.C. 1101(a)(43)." That section in turn lists numerous subsets of offenses

No. 15-10615

that qualify as aggravated felonies, including any offense "described in" 18 U.S.C. § 922(g)(1)," which is the federal felon in possession of a firearm statute.

The Probation Office ultimately concluded in its Pre-Sentence Report ("PSR") that the 8-level enhancement applied because Castillo-Rivera had been previously deported in 2013 after a state court conviction for Unlawful Possession of a Firearm by a Felon in violation of Texas Penal Code ("TPC") § 46.04. The district court accepted the PSR, and sentenced Castillo-Rivera pursuant to the 8-level enhancement. Castillo-Rivera appeals, arguing that TPC § 46.04 is substantively broader than 18 U.S.C. § 922(g)(1), and is therefore not an "aggravated felony" under the sentencing guidelines. We AFFIRM.

I

Castillo-Rivera was born in Mexico, and came to the United States shortly after his birth. In 2009, he pleaded guilty in Texas state court to Unlawful Possession of Heroin, a state jail felony. Later that year, he again pleaded guilty in Texas state court, this time to Unauthorized Use of a Vehicle, also a state jail felony. In 2013, he pleaded guilty a third time in Texas state court, to Unlawful Possession of a Firearm by a Felon. He was deported to Mexico shortly thereafter. He reentered the United States illegally and was again arrested in Texas in 2014. This last arrest led to the illegal reentry charge and conviction at issue here.

After Castillo-Rivera pleaded guilty to illegal reentry, the Probation Office produced a PSR. The PSR noted that, because "the defendant was deported from the United States subsequent to a conviction for a felony offense, 4 levels are added pursuant to USSG § 2L1.2(b)(1)(D)." The government filed a written objection, arguing that Castillo-Rivera's conviction for Unlawful Possession of a Firearm by a Felon under TPC § 46.04 was "described in" 18 U.S.C. § 922(g)(1), therefore "constitute[d] an aggravated felony" under 8

No. 15-10615

U.S.C. § 1101(a)(43), and thus triggered the "8-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(C)." The Probation Office agreed, and issued an addendum modifying the PSR to impose an 8-level enhancement instead of the 4-level enhancement it initially recommended. Castillo-Rivera's guidelines range increased from 24–30 months to 33–41 months as a result of the larger enhancement. Castillo-Rivera filed a written objection to the addendum. The district court overruled his objection, accepted the PSR with the addendum, and sentenced Castillo-Rivera to 34 months in prison.

Castillo-Rivera appealed his sentence to a panel of this court, arguing that TPC § 46.04 is a nongeneric statute because it is substantively broader than 18 U.S.C. § 922(g)(1), and therefore cannot be considered an aggravated felony for purposes of the sentencing guidelines. The panel concluded that this argument was foreclosed by a previous panel's holding, explaining that, "[i]n *Nieto Hernandez v. Holder*, we squarely held that 'TPC § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)'s definition of 'aggravated felony'" *United States v. Castillo-Rivera*, 836 F.3d 464, 464 (5th Cir. 2016) (quoting *Nieto Hernandez v. Holder*, 592 F.3d 681, 686 (5th Cir. 2009)). Because it concluded that it was bound by previous precedent, the panel did not address the merits of Castillo-Rivera's statutory arguments. We granted rehearing en banc in order to do so.[1]

II

Section 2L1.2(b)(1)(C) of the Sentencing Guidelines states that, when a defendant is convicted of illegal reentry, "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for an aggravated felony," the defendant's Base Offense Level should "increase

---

[1] Upon granting Castillo-Rivera's petition for rehearing en banc, we requested briefing regarding the proper application of this circuit's rule of orderliness in cases where a party made an explicit concession before a prior panel that is dispositive in a future case. We do not reach this issue here, as it is not necessary to our disposition of Castillo-Rivera's case on the merits.

by **8** levels." The commentary on this section explains that "[f]or purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in [8 U.S.C. § 1101(a)(43)]." U.S.S.G. § 2L1.2 cmt. n.3(A). Section 1101(a)(43) provides a lengthy list of subsets of crimes that qualify as aggravated felonies. One such subset includes any "offense described in . . . section 922(g)(1) . . . relating to firearms offenses." 8 U.S.C. 1101(a)(43)(E)(ii). 18 U.S.C. § 922(g)(1), the federal felon-in-possession statute, reads,

> [i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition . . . which has been shipped or transported in interstate of foreign commerce.

Castillo-Rivera was convicted under TPC § 46.04, which is the Texas felon-in-possession counterpart to 18 U.S.C. § 922(g)(1). The Texas statute reads in relevant part, "[a] person who has been convicted of a felony commits an offense if he possesses a firearm." Tex. Penal Code Ann. § 46.04(a) (West 2009).

To determine whether Castillo-Rivera's conviction under TPC §46.04 qualifies as an "aggravated felony," we apply a "categorical approach, under which we refer only to the statutory definition of the crime for which the [defendant] was convicted . . . and ask whether that legislatively-defined offense necessarily fits within [8 U.S.C. § 1101(a)(43)'s] definition of an aggravated felony." *Larin-Ulloa v. Gonzales*, 462 F.3d 456, 463 (5th Cir. 2006). Here, that means asking whether the offense outlined in TPC § 46.04 is "described in" 18 U.S.C. § 922(g)(1). Castillo-Rivera argues that it is not, because the definitions of "felony" and "firearm" for purposes of the Texas statute are broader than their federal counterparts. We address each of these arguments in turn.

No. 15-10615

## III

A.    Felony

For purposes of TPC § 46.04, "felony" is defined as any offense that "(1) is designated by a law of this state as a felony; (2) contains all the elements of an offense designated by a law of this state as a felony; or (3) is punishable by confinement for one year or more in a penitentiary." Tex. Penal Code Ann. § 46.04(f) (West 2009). 18 U.S.C. § 922(g)(1), by contrast, makes the possession of a firearm unlawful for those convicted of "a crime punishable by imprisonment for a term exceeding one year." Castillo-Rivera argues that the term "felony" as used in TPC § 46.04 is broader—i.e. includes more crimes— than Section 922(g)(1). He contends, for example, that crimes that are punishable for exactly one year are considered felonies for purposes of TPC § 46.04, but not for 18 U.S.C. § 922(g)(1). And, because the text of TPC § 46.04 includes as felonies crimes that would not qualify under its federal counterpart, it cannot be "described in" section 922(g)(1).

But the comparison of generic federal statutes to allegedly nongeneric state counterparts is not an invitation to apply "legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). A defendant who argues that a state statute is nongeneric cannot simply rest on plausible interpretations of statutory text made in a vacuum. He must also show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of the crime." *Id.* The Supreme Court has explained that establishing a realistic probability is not an exercise in educated guessing. Rather, "[t]o show [a] realistic probability, an offender, of course, may show that the statute was so applied in his case. But he must *at least* point to his own case or other cases *in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues*." *Id.* (emphases added); *see also Moncrieffe v.*

5

*Holder*, 133 S. Ct. 1678, 1693 (2013) (reiterating that defendants "have to demonstrate that the State actually prosecutes the relevant offense" in a nongeneric manner).

Thus, in order to prevail on his argument that the term "felony" as used in TPC § 46.04 includes crimes that would not be included under 18 U.S.C. § 922(g)(1), Castillo-Rivera cannot simply point to certain crimes that may be included in one but not the other. He must also show that Texas courts have *actually applied* TPC § 46.04 in this way. He has failed to do so—indeed, he makes no attempt. Instead, he describes numerous crimes that *could* be considered felonies under the Texas statute but that are not felonies under federal law, even suggesting that "[t]here are probably too many" such offenses to list in his brief. It is telling that, despite these many evident opportunities, Castillo-Rivera does not point to any case in which Texas courts actually applied TPC § 46.04's definition of felon to a defendant who could not also be covered by 18 U.S.C. § 922(g)(1).

The dissent maintains that, because the Texas statute's definition of felon is plainly broader than its federal counterpart, Castillo-Rivera is not required to point to an actual case in which Texas courts applied the Texas statute's definition of felon to capture those not included under Section 922(g)(1). That position does not comply with the Supreme Court's directive in *Duenas-Alvarez*. There is no exception to the actual case requirement articulated in *Duenas-Alvarez* where a court concludes a state statute is broader on its face. Indeed, the Court in *Duenas-Alvarez* emphasized that a defendant must "at least" point to an actual state case—the implication being that even pointing to such a case may not be satisfactory. *Duenas-Alvarez*, 549 U.S. 183, 193. In short, without supporting state case law, interpreting a state statute's text alone is simply not enough to establish the necessary "realistic probability." *Id.*

No. 15-10615

It is worth also noting the practical implications of Castillo-Rivera's contention. Although it may seem narrow at first glance, Castillo-Rivera's (and the dissent's) argument that the Texas felon-in-possession statue is non-generic is in fact breathtaking in scope. Castillo-Rivera maintains that the Texas statute is broader because it includes within its definition of felony crimes that are punishable for less than a year-and-a-day. But such a ruling would render *dozens* of states' felon-in-possession statutes non-generic. Maine's statute, for example, prohibits possession by anyone convicted of "[a] crime . . . that is punishable by imprisonment for a term of one year or more." Me. Stat. tit. 15 § 393. And in Maine, Unlawful Sexual Touching is punishable by up to a year in county jail. Me. Stat. tit. 17-A § 260. Applying the dissent's logic, Maine's statute is non-generic because, *on its face*, it criminalizes possession of a firearm by someone convicted of a crime that is punishable by less than a year-and-a-day imprisonment. Whether Maine courts *actually apply* its felon-in-possession statute in such a manner is, for the dissent, irrelevant. Or consider Maryland, which prohibits a person from possessing a firearm if he or she "has been convicted of a disqualifying crime." Md. Code Ann., Pub. Safety, § 5-133. A "disqualifying crime" includes "a violation classified as a felony." Md. Code Ann., Pub. Safety, § 5-101. In Maryland, child abduction in certain instances is a felony punishable by *up to a year* in prison. Md. Code Ann., Family Law, § 9-307. Goodbye Maryland. And what of the many states whose definition of "felony" for purposes of firearm possession includes persons who were convicted under the laws of *any* state? If Texas's statute is non-generic, so are all of those as well. So long, Alaska, California, Colorado, Georgia, Illinois, Iowa, Kentucky, Nevada, New Hampshire, New Mexico, and Virginia. Indeed, by our count, 37 states' felon-in-possession statutes would be at least arguably rendered non-generic if we applied Castillo-

7

No. 15-10615

Rivera's logic.[2] It strains credulity to suggest that such a result would reflect Congress' intent in enacting 18 U.S.C. § 922(g)(1).

Our own precedents are also in agreement that, to successfully argue that a state statute is nongeneric, a defendant must provide actual cases where state courts have applied the statute in that way. The case *United States v. Carrasco-Tercero*, 745 F.3d 192 (5th Cir. 2014) is particularly instructive because it has important similarities to our own. Like Castillo-Rivera, Carrasco-Tercero pleaded guilty to illegal reentry. His PSR also recommended an enhancement, in his case because he had been convicted in New Mexico for aggravated assault with a deadly weapon, which was considered a crime of violence pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). Like Castillo-Rivera, he too argued that the state statute was broader on its face than its federal counterpart, and therefore could not be considered a crime of violence for sentencing purposes.[3] A unanimous panel—quoting to *Duenas-Alvarez*—rejected Carrasco-Tercero's contention, concluding that his argument from the text of the New Mexico statute was unavailing because he "failed to identify a single case where a New Mexico court ha[d] convicted a defendant . . . based on" his proposed interpretation of the statute's language. *Id.* at 198.

*Carrasco-Tercero* is no outlier. In *United States v. Teran-Salas*, 767 F.3d 453 (5th Cir. 2014), for example, we held that, although the defendant had "describe[d] a theoretical possibility that [a] Texas statute criminalize[d] conduct that would not qualify" as a generic federal offence, his argument

---

[2] For a list of all of these, see the Appendix attached to this opinion.

[3] Indeed, Carrasco-Tercero's argument was even stronger than Castillo-Rivera's, because he pointed to persuasive precedent from a sister circuit explicitly holding that the New Mexico statute's broad language "obstruct[ed] any argument that New Mexico aggravated assault (deadly weapon) qualifies as a crime of violence." *Carrasco-Tercero*, 745 F.3d at 197 (quoting *United States v. Rede-Mendez*, 680 F.3d 552, 558 (6th Cir. 2012)).

failed nonetheless because he could not establish a "realistic probability" that he or anyone else was prosecuted in Texas under the nongeneric interpretation. *Id.* at 460. In *United States v. Ceron*, 775 F.3d 222 (5th Cir. 2014), we again rejected a defendant's "clever hypothetical" because he made "no showing that [state] courts actually apply the [state] statute to this . . . hypothetical conduct." *Id.* at 229. In *United States v. Hernandez-Galvan*, 632 F.3d 192 (5th Cir. 2011) we concluded that, although the state statute in question had language that could be interpreted as criminalizing some acts that its federal generic counterpart would not, the defendant had not "demonstrate[d] that th[e] difference is significant as a practical matter" because he "ha[d] not identified even one [state] case that . . . would have been decided differently." *Id.* at 200. We have reiterated this point in many other cases. *See, e.g., United States v. Sanchez*, 667 F.3d 555, 561 (5th Cir. 2012) (defendant had to point to an actual case even though the "literal terms" of the state statute were arguably different from their federal equivalents); *United States v. Garcia-Figueroa*, 753 F.3d 179, 187 (5th Cir. 2012) (same); *United States v. Cordoba-Posos*, 295 F. App'x 651, 656–57 (5th Cir. 2008) (a State Senator's statements to the effect that a state statute swept more broadly than its federal counterpart was "insufficient to show a realistic probability" where defendant could not "produce a single case" in which a state court had actually applied the state law as such); *United States v. Lara-Martinez*, 836 F.3d 472, 476 (5th Cir. 2016) (defendant did not satisfy the actual case requirement where he pointed to a case applying a different state statutory provision).[4]

---

[4] It is worth noting that a number of the dissenters here were in the majority in one or more of the listed cases in our circuit holding that a defendant must point to an actual state case applying a state statute in a nongeneric manner, even where the state statute may be plausibly interpreted as broader on its face.

No. 15-10615

Castillo-Rivera has had multiple opportunities to present a case in which a Texas court applied TPC § 46.04's definition of felon to a defendant who could not have been considered a felon under 18 U.S.C. § 922(g)(1). He did not do so in the court below, he did not before the panel on appeal, and he has not in his briefing or at oral argument before the en banc court. His argument that TPC § 46.04's definition of felon is broader than Section 922(g)(1) therefore fails.

B.    Firearm

For purposes of TPC § 46.04, "firearm" is defined as "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." Tex. Penal Code Ann. § 46.01(3) (West 2009). Federal law defines "firearm" for purposes of 18 U.S.C. § 922(g)(1) as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silences; or (D) any destructive device." 18 U.S.C. § 921(a)(3). Castillo-Rivera homes in on one supposed distinction between the two definitions: under the Texas definition a firearm expels a projectile by "explosion or burning substance," while under the federal definition a firearm expels a projective by "explosive." He argues that, although textually similar, the Texas definition includes an "air gun"—a weapon that expels projectiles using compressed air—while the federal definition does not.

We note at the outset that Castillo-Rivera is correct that an air gun is not a firearm within the federal definition. *See, e.g., United States v. Housholder*, 664 F. App'x 720, 723 (10th Cir. 2016) (noting that "an airgun . . . is not a firearm"); *United States v. Crooker*, 608 F.3d 94, 96 (1st Cir. 2010) (holding that the federal definition of firearm "self-evidently does not include

an air rifle . . . which operates by compressed air"). As above, however, Castillo-Rivera must also establish a realistic probability that Texas would apply its definition of firearm to include an air gun when applying TPC § 46.04 by pointing to an actual case where a Texas court did so. He attempts to satisfy this burden by pointing to two Texas cases. Neither is availing.

The first, *Mosley v. State*, 545 S.W.2d 144 (Tex. Crim. App. 1976), is easily disposed of. In that case, the defendant was convicted of aggravated assault after pointing an unloaded B.B. gun at his victim in a parking lot and threatening to kill her. *Id.* at 145. He appealed his conviction, arguing that the B.B. gun was not a "deadly weapon" as required by the Texas aggravated assault statute. *Id.* In its opinion on Texas's motion for rehearing, the court wrote, "[i]n holding that the device involved did not constitute a firearm . . . the opinion did not attempt to exclude all types of air guns or pistols from the definition of a firearm. *We do not reach that question in this case.*" *Id.* at 146 (emphasis added). Indeed, the court reaffirmed its holding that Mosley's B.B. gun was *not* a firearm. This case therefore offers no help to Castillo-Rivera.

The second case Castillo-Rivera highlights is admittedly closer to the mark. In *Boston v. State*, No.05-96-00832-CR, 1998 WL 19938 (Tex. App.—Dallas Jan. 22, 1998), Boston was convicted for aggravated assault of a peace officer under TPC § 22.02(a)(2) after pointing an air rifle at a law enforcement officer. Boston appealed his conviction and challenged the sufficiency of the evidence, arguing that the air rifle was not a "firearm" as alleged in his indictment. *Id.* at *1. A firearms expert at Boston's trial testified that the air rifle qualified as a firearm under the definition in TPC § 46.01—the same definition at issue in Castillo-Rivera's case. *Id.* Explaining that it was bound by the trial court's crediting the expert's testimony on the firearm issue, the court in *Boston* found that the expert's testimony was "sufficient for the trial court to find beyond a reasonable doubt that the air rifle fell within the

definition of 'firearm' in chapter 46." *Id.* at *2. Castillo-Rivera argues that, because *Boston* interpreted chapter 46's definition of "firearm" to include an air rifle, and because Boston could not have been convicted of the crime with which he was charged absent application of that definition, *Boston* establishes a realistic probability that Texas would apply TPC § 46.04 to include air guns.

We note first that *Boston* did not hold as a matter of law that the Texas definition of firearm includes air guns. The court made a sufficiency–of–the–evidence determination only, and applied the very deferential standards of review appropriate in such a case. As such, the court "[did] not have the power to re-evaluate the probity" of the firearms expert's testimony. *Id.* at *2. Importantly, therefore, the court *did not decide* if an air gun is a firearm under TPC § 46.01; it only decided that the district court did not err in crediting a given firearms expert's testimony to that effect.

Perhaps more importantly, *Boston* was *not a felon-in-possession case.* Indeed, it had nothing to do with TPC § 46 whatsoever. Boston was charged and convicted under an entirely different chapter of the Texas code—TPC § 22.02(a)(2). The court in *Boston* highlighted this distinction, writing, "[w]e note initially that appellant was charged with aggravated assault under chapter 22 of the penal code. By its text, the definition of 'firearm' in section 46.01 only applies to the weapons offenses enumerated in chapter 46." *Id.* (internal citations omitted). The court went on to explain that it was simply using chapter 46's definition "to assist in the understanding of 'deadly weapon' in the context of other offenses." *Id.* Thus, the court in *Boston* did not purport to interpret or apply TPC § 46's definition of firearm for purposes of chapter 46 itself.

Castillo-Rivera contends that TPC § 46.04 is nongeneric in part because it criminalizes possession of an air gun where its federal counterpart does not. *Boston* does not establish the necessary realistic probability that Texas courts

would apply TPC § 46.04 *itself* in this nongeneric manner, because *Boston* did not deal with TPC § 46.04 at all. The Supreme Court has instructed that, to carry his burden, a defendant must point to a case "in which the state courts in fact did apply *the statute* in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193 (emphasis added); *see also Moncrieffe*, 133 S. Ct. at 1693 (defendant must point to a case in which "the State actually prosecute[d] *the relevant offense*" in a nongeneric fashion) (emphasis added). *Boston* is not such a case. Castillo-Rivera's argument regarding the definition of firearm must therefore fail as well.

## IV

Because Castillo-Rivera has not established a realistic probability that Texas courts would actually apply TPC § 46.04 more broadly than 18 U.S.C. § 922(g)(1), his argument that TPC § 46.04 is not an aggravated felony for purposes of the sentencing guidelines fails. The 8-level enhancement to his sentence was correctly applied. Judgment is AFFIRMED.

| | State | Felon in Possession of Firearm Statute | Language in Issue | Effect |
|---|---|---|---|---|
| 1 | Alabama | Ala. Code § 13A-11-72 | "No person who has been convicted . . . of committing or attempting to commit a . . . misdemeanor offense of domestic violence" | Domestic violence, third degree is Class A misdemeanor. Ala. Code § 13A-6-132. Class A misdemeanor punishable by "a term of imprisonment not in excess of one year." Ala. Code § 13A-5-7. |
| 2 | Alaska | Alaska Stat. § 11.61.200 | "convicted of a felony . . . by . . . a court of another state or territory " | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 3 | California | Cal. Penal Code § 29800 | "Any person who has been convicted of a felony under the laws of . . . any other state" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 4 | Colorado | Colo. Rev. Stat. § 18-12-108 | "subsequent to the person's conviction for a felony . . . under . . . any other state's law" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 5 | Delaware | Del. Code Ann. tit. 11 § 1448 | "Any person who has been convicted in any court of any misdemeanor crime of domestic violence . . . defined under § 601" | Del. Code Ann. tit. 11 § 601, Offensive Touching, can be a Class A misdemeanor punishable by up to one year in prison. Del. Code Ann. tit. 11 § 4206. |
| 6 | DC | D.C. Code § 22-4503 | "Has been convicted within the past 5 years of an intrafamily offense" | A violation of D.C. Code § 16-1022, Parental Kidnapping, is punishable by imprisonment of one year. D.C. Code § 16-1024. |
| 7 | Georgia | Ga. Code Ann. § 16-11-131 | "Any person . . . who has been convicted of a felony by a court of this state or any other state" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 8 | Hawaii | Haw. Rev. Stat. § 134-7 | "No person who . . . has been convicted . . . of . . . any crime of violence" | "Crime of Violence," as defined in Haw. Rev. Stat. § 134-1, includes harassment by stalking, Haw. Rev. Stat. § 711-1106.5. Harassment by stalking is a misdemeanor, punishable by a prison sentence "not to exceed one year." Haw. Rev. Stat. § 706-663. |
| 9 | Idaho | Idaho Code § 18-3316 | "'[C]onvicted of a felony' shall include . . . any of the crimes enumerated in [Idaho Code §] 18-310" | One of the crimes listed in Idaho Code § 18-310, Enticing of Children, has punishment of not more than six months in prison. Idaho Code § 18-1509. |
| 10 | Illinois | 720 Ill. Comp. Stat. 5/24-1.1 | "if the person has been convicted of a felony under the laws of this State or any other jurisdiction." | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 11 | Iowa | Iowa Code § 724.26 | "A person who is convicted of a felony in a state or federal court" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 12 | Kansas | Kan. Stat. Ann. § 21-6304 | "Has been convicted of . . .a violation of article 57 of chapter 21 of the Kansas Statutes Annotated" | A violation of Kan. Stat. Ann. § 5706(b) is a Class A misdemeanor, punishable by up to a year in prison. Kan. Stat. Ann § 21-6602(a)(1). |
| 13 | Kentucky | Ky. Rev. Stat. Ann. § 527.040 | "[W]hen he has been convicted of a felony, as defined by the laws of the jurisdiction in which he was convicted, in any state or federal court" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 14 | Louisiana | La. Stat. Ann. § 14:95.1 | "Any person who has been convicted of . . . any crime which is described as a sex offense in R.S. 15:541" | La. Stat. Ann [R.S.] § 15:541 includes a second conviction of voyuerism, which carries a penalty of imprisonment with or without hard labor for not more than one year. La. Stat. Ann. § 14:283.1 |
| 15 | Maine | Me. Stat. tit. 15 § 393 | "A crime that is punishable by imprisonment for a term of one year or more" | Me. Stat. tit. 17-A § 260, Unlawful Sexual Touching, is a Class D offense, punishable by up to a year in county jail. Me. Stat. tit 17-A § 1252 |
| 16 | Maryland | Md. Code Ann., Pub. Safety, § 5-133 | "[A] person may not possess a regulated firearm if the person (1) has been convicted of a disqualifying crime" | Disqualifying crime, as defined in Md. Code Ann., Pub. Safety, § 5-101, includes "a violation classified as a felony in the State." Md. Code Ann., Family Law, § 9-305, Abduction/Detainment of a Child, is a felony punishable by up to a year in prison. Md. Code Ann., Family Law, § 9-307. |
| 17 | Massachusetts | Mass. Gen. Laws ch. 269 § 10 | "A firearm identification card shall be issued [to] any person . . . if it appears that the applicant is not a prohibited person. A prohibited person shall be a person who: (i) has ever . . . been convicted . . . of . . . (e) a violation of any law regulating the use, possession or sale of controlled substances . . . including . . . chapter 94C" Mass. Gen. Laws ch. 140 § 129 | Mass. Gen. Laws ch. 94C § 32G makes the creation, distribution, dispersion, and possession of a counterfeit substance a crime punishable by not more than one year in jail. |
| 18 | Minnesota | Minn. Stat. § 624.713 | "a person who has been convicted in Minnesota or elsewhere of a misdemeanor or gross misdemeanor violation of chapter 152" | Minn. Stat. § 152.027(6) makes possession of a synthetic cannabinoid a misdemeanor punishable by up to ninety days in jail. Minn. Stat. § 609.02 |
| 19 | Mississippi | Miss. Code Ann. § 97-37-5 | "It shall be unlawful for any person who has been convicted of a felony under the laws of this state" | Miss. Code Ann. § 97-3-13, Malicious Confinement as Mentally Ill, is a felony which carries a penalty of not more than a year in the penitentiary |
| 20 | Nebraska | Neb. Rev. Stat. § 28-1206 | "Any person who possesses a firearm . . . And who has been convicted within the past seven years of a misdemeanor crime of domestic violence" | Neb Rev. St. § 28-323, domestic assault, has one violation which qualifies as a Class I misdemeanor. Neb. Rev. St. § 28-106 sets penalty for Class I misdemeanor penalty as not more than one year imprisonment |
| 21 | Nevada | Nev. Rev. Stat. § 202.360 | "A person shall not own or have . . . any firearm if the person: (a) Has been convicted of a felony in this State or any other state" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |

| | | | | |
|---|---|---|---|---|
| 22 | New Hampshire | N.H. Rev. Stat. Ann. § 159.3 | "A person is guilty of a class B felony if he (a) Owns or has in his possession or control [a weapon] and (b) Has been convicted in either a state or federal court in this or any other state" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 23 | New Jersey | N.J. Stat. Ann. § 2C:39-7 | "[A]ny person convicted of a crime pursuant to the provisions of N.J.S.2C:39-3 . . . who [has] any of the said weapons is guilty of a crime" | N.J. Stat. Ann. § 2C:39-3(k) makes the possession of handcuffs under circumstances not manifestly appropriate for such lawful uses as handcuffs may have guilty of a disorderly persons offense. Disorderly person offenses in NJ are punishable by up to six months in jail. N.J. Stat. Ann. § 2C:43-8 |
| 24 | New Mexico | N.M. Stat. Ann. § 30-7-16 | "As used in this section: . . . (2) felon means a person convicted of a felony offense by a court of the United States or of any state or political subdivision thereof | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 25 | New York | N.Y. Penal Law § 265.02 | "A person is guilty of criminal possession of a weapon in the third degree when (1) such person . . . Has been previously convicted of a crime" | "Any crime" would include misdemeanors, which carry no more than a year in prison. N.Y. Penal Law § 70.15 |
| 26 | North Carolina | N.C. Gen. Stat. § 14-415.1 | "It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess . . . any firearm" | According to the North Carolina Punishment Chart, Class I felonies are punishable by up to a year in jail. The Guidelines are available here: http://www.nccourts.org/Courts/CRS/Councils/spac/Sentencing/Punishment.asp |
| 27 | North Dakota | N.D. Cent. Code § 62.1-02-01 | "A person who has been convicted anywhere of a felony offense involving violence or intimidation in violation of chapters 12.1-16 through 12.1-25" | N.D. Cent. Code § 12.1-17-01, Simple Assault, can be a Class B misdemeanor, punishable by a maximum of thirty days in jail. N.D. Cent. Code § 12.1-32-01 |
| 28 | Ohio | Ohio Rev. Code Ann. § 2923.13 | "No person shall knowingly [have] any firearm . . . If (2) The person is under indictment for or has been convicted of any felony offense of violence" | Offense of violence, as defined in Ohio Rev. Code Ann. § 2901.01, includes Assault, Ohio Rev. Code Ann. § 2903.13. Assault can be a felony of the fifth degree, punishable by up to a year in jail. Ohio Rev. Code Ann. § 2923.13 |
| 29 | Oklahoma | Okla. Stat. tit. 21 § 1283 | "[I]t shall be unlawful for any person convicted of any felony in any court of this state" | Attempt to Escape from other prison than penitentiary is a felony punishable by imprisonment not exceeding one year. Okla. Stat. tit. 21 § 1283 |
| 30 | Oregon | Or. Rev. Stat. § 166.270 | "Any person who has been convicted of a felony under the law of this state or any other state" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 31 | Pennsylvania | 18 Pa. Cons. Stat. § 6105 | "A person who has been convicted of an offense enumerated in subsection (b)" | Subsection B includes Corruption of Minors, which can be a third degree misdemeanor. 18 Pa. Cons. Stat. § 6301(a)(2). Third degree misdemeanors have a maximum term of imprisonment of up to one year. 18 Pa. Cons. Stat. § 106 |
| 32 | Rhode Island | R.I. Gen. Laws § 11-47-5 | "(a) No person who has been convicted in this state or elsewhere of a crime of violence . . . shall [have] any firearm." | Crime of violence, as defined in R.I. Gen. Laws § 11-47-2(2), includes felony manufacture of a controlled substance. R.I. Gen. Laws § 21-28-4.01. Manufacture of a Schedule V substance is a felony, as it could be penalized with a fine of more than $1,000. R.I. Gen. Laws § 11-1-2. Manufacture of a Schedule V substance also carries a potential prison sentence of up to a year. |
| 33 | Texas | Tex. Penal Code § 46.04 | "For purposes of this section, an offense under the laws of this state, another state . . . is . . . a felony if . . . the offense: . . . (3) is punishable by confinement for one year or more in a penitentiary" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 34 | Utah | Utah Code Ann. § 76-10-503 | "For purposes of this section: . . . a Category II restricted person is a person who : has been convicted of any felony" | Utah Code Ann. § 41-4-9 makes it a felony to violate the specific chapter of Utah Motor Vehicle Code. That punishment cannot be greater than a year. |
| 35 | Vermont | Vt. Stat. Ann. tit 13 § 4017 | "A person shall not possess a firearm if the person has been convicted of a violent crime." | Violent crime, as defined in Vt. Stat. Ann. tit 13 § 4017, includes violation of abuse prevention order under Vt. Stat. Ann. tit 13 § 1030. Violation of abuse prevention order carries a penalty of not more than one year in prison |
| 36 | Virginia | Va. Code Ann. § 18.2-308.2 | "It shall be unlawful for (i) any person who has been convicted of a felony . . . whether such conviction or adjudication occurred under the laws of the Commonwealth, or any other state" | Statute includes felonies from other states that carry punishment of up to a year in prison (MD, MS, OH, OK, UT) |
| 37 | West Virginia | W. Va. Code § 61-7-7 | "No person shall possess a firearm . . . who: . . . (8) has been convicted of a misdemeanor offense of assault or battery either under the provisions of section twenty-eight, article two of this chapter | W. Va. Code § 61-2-28, Domestic Violence, includes the crime domestic battery, which is punishable by up to a twelve months in jail. |

No. 15-10615

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

I write separately to explain my views on two matters. First, the many opinions have produced several conflicting and remarkably distinct understandings of Supreme Court precedent. With respect, I find more complexity in these writings than is presented in the case. To my eyes, the overarching objective here is to achieve equality in federal sentencing. To that end, when criminal records are considered in federal sentencing, and we look to state convictions, our effort is to assign the same values to the same criminal conduct. Hence, we must not accept labels of crimes—for example burglary— when often the offenses travelling out of that label vary greatly in the criminal conduct being punished.[1] Responding to this reality, the Supreme Court has defined a federal offense filter through which these state convictions must pass. For example, we do not wish to impose the same levels of punishment in a federal statute for a defendant engaged in shoplifting and a defendant engaged in the felony of burglary. Returning to these basic principles, I am confident the Court can, and will, in future cases move to an even more compelling analysis. In addition to the thoughtful dissent of Judge Dennis, the other writings strongly suggest we are on such a path. As we move forward, I join Judge Clement's opinion as a stabilizing way station. For these reasons, I concur in Judge Clement's opinion for the Court.

Regarding the rule of orderliness issue, Judge Smith's dissent proposes that this Court set off on an unwise course that would inevitably lead to confusion on threshold questions about how to interpret precedent. Well-intentioned though it is, and with respect, I must register disagreement and a

---

[1] *See United States v. Bernel-Aveja*, 844 F.3d 206, 215 (5th Cir. 2016) (Higginbotham, J., concurring in the judgment).

caution. To go forward and reduce the jurisprudence of stare decisis to a detailed code confected by case-by-case determination of rules apart from our well-developed principles of stare decisis would serve disorder, not order.

Our "rule" of orderliness is simply that we are to apply stare decisis in determining whether an earlier panel opinion is controlling. It differs from that body of jurisprudence in one respect—a difference which captures the need for orderly process among three-judge panels—that is, one panel may not overrule another. A panel's application of the stare decisis rule is always reviewable by an en banc proceeding, decisions inevitably interlaced with the merits of the issues. We have one other self-imposed constraint, that requiring pre-circulation of opinions that would create conflicts with other circuits. While largely hortatory, its disregard is equally reviewable by the en banc court. If the objectives here are to reduce the number of en banc courts, the path suggested is perverse. Another observation that Yogi did not make is that "if it ain't broke, don't fix it."

No. 15-10615

PRISCILLA R. OWEN, Circuit Judge, joined by E. GRADY JOLLY, Circuit Judge, concurring:

I concur in the en banc court's opinion. I write separately because there is an additional, at least equally compelling, basis for concluding that Castillo-Rivera's prior conviction in 2009 under Texas Penal Code section 31.07(b) for unauthorized use of a motor vehicle constitutes "an offense described in" 18 U.S.C. § 922(g)(1).[1] That basis is that Castillo-Rivera's prior conviction comes within subsection (1) of 46.04(f), and all predicate offenses defined in subsection (1) of 46.04(f) are "described in" § 922(g)(1), and section 46.04(f) is "divisible." This is clear when Texas law and the Supreme Court's jurisprudence regarding "divisible" statutes are examined.

The term "felony," as used in the Texas felon-in-possession statute, is defined in that statute itself, in subsection (f). Section 46.04 states:

(a)    A person who has been convicted of a felony commits an offense if he possesses a firearm: [after conviction within certain parameters]

. . .

(f)    For the purposes of this section, an offense under the laws of this state, another state, or the United States is, except as provided by Subsection (g), a felony if, at the time it is committed, the offense:

   (1)    is designated by a law of this state as a felony;
   (2)    contains all the elements of an offense designated by a law of this state as a felony; or
   (3)    is punishable by confinement for one year or more in a penitentiary.[2]

All agree that if a defendant were convicted of an offense described in subsection 3 of 46.04(f) that was punishable by not more than one year of

---

[1] 8 U.S.C. § 1101(a)(43)(E).
[2] TEX. PENAL CODE ANN. § 46.04 (West).

confinement, then that offense would not be "an offense described in" the federal felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(1).[3] That is because the term of confinement for an offense qualifying under 46.04(f)(3), "confinement for one year or more in a penitentiary," can be less than the term of confinement for an offense described in § 922(g)(1), which is "punishable by imprisonment for a term exceeding one year." However, all offenses described in subsection 1 of 46.04(f) are categorically offenses "punishable by imprisonment for a term exceeding one year."[4] An offense under subsection 46.04(f)(1) is one that "is designated by a law of this state as a felony."[5] Under Texas law, the least serious felonies are "state jail felonies,"[6] and the term of confinement for a state jail felony is "not more than two years or less than 180 days."[7] Consequently, every offense expressly designated as a "felony" by a Texas statute carries a potential sentence of at least up to two years of confinement. Castillo-Rivera does not dispute this.

Castillo-Rivera argues that Texas Penal Code section 46.04(f) is overly broad and is not "divisible," within the meaning of Supreme Court decisions

---

[3] *See* 8 U.S.C. § 1101(a)(43)(E) (referencing "an offense described in" 18 U.S.C. § 922(g)).

[4] 18 U.S.C §922(g)(1).

[5] TEX. PENAL CODE ANN. § 46.04(f)(1) (West).

[6] *See id.* § 12.04:

> § 12.04. CLASSIFICATION OF FELONIES
>
> (a)  Felonies are classified according to the relative seriousness of the offense into five categories:
>> (1)  capital felonies;
>> (2)  felonies of the first degree;
>> (3)  felonies of the second degree;
>> (4)  felonies of the third degree;  and
>> (5)  state jail felonies.
>
> (b)  An offense designated a felony in this code without specification as to category is a state jail felony.

[7] *Id.* § 12.35(a).

No. 15-10615

including *Mathis v. United States*.[8]   He therefore asserts that courts cannot consider the judicial documents pertaining to his prior conviction to see if it was for an offense that comes within subsection (1), rather than subsection (3). This argument should be rejected.

Each of the three subsections in 46.04(f) are distinct definitions of what offenses are considered "felon[ies]" for purposes of the Texas felon-in-possession statute.   While it is undisputed that not all offenses described in subsection (3) are described within § 922(g)(1), *all* offenses described in subsection (1) are described within § 922(g)(1).   Importantly, each of the subsections in 46.04(f) contains only legal definitions.   Whether a prior conviction is an offense coming within subsection (1) of 46.04(f) is a question of law decided by the Texas courts in which the felon-in-possession-of-a-firearm is prosecuted.[9]   In the present case, a court can examine the predicate offense for the Texas felon-in-possession-of-a-firearm conviction and determine, as a matter of law, whether that predicate offense came within subsection 46.04(f)(1).

---

[8] 136 S. Ct. 2243 (2016).

[9] *See Lucio v. State*, 128 S.W.3d 262, 263 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("The issue presented by this appeal is whether the State was required to prove that the aggravating offense, i.e., indecency with a child, was a felony.  We hold that the State was not required to put on evidence to prove that indecency with a child is a felony.  It is true that *whether the appellant committed the crime* of indecency with a child was a question of fact for the jury.  Accordingly, the jury was charged on the elements of indecency with a child. However, *whether such crime is a felony* presents a legal issue, not a fact question.  Therefore, the trial judge correctly instructed the jury that indecency with a child is a felony, rather than submitting that issue to the jury for a factual determination."); *see also Andika v. State*, No. 10-04-00278-CR, 2005 WL 1484050, at *4 (Tex. App.—Waco June 22, 2005, no pet.) (mem. op., not designated for publication) ("Whether a prior conviction is a felony is a question of law; it is not subject to a 'legal sufficiency' review."); *Jordan v. State*, No. 01-14-00721-CR, 2015 WL 6768497, at *7 (Tex. App.—Houston [1st Dist.] Nov. 5, 2015, no pet.) (mem. op., not designated for publication) ("Whether an out-of-state offense constitutes a felony for purposes of enhancement is a question of law that we review de novo.").

No. 15-10615

Although it is questionable whether the *Mathis* divisibility inquiry fully applies to a statute such as Texas Penal Code section 46.04(f), that inquiry leads to the conclusion that section 46.04(f) is "divisible." The decision in *Mathis* explains that when considering if Congress intended certain offenses to constitute an enumerated or described offense, "Congress referred only to their usual or (in our terminology) generic versions—not to all variants of the offenses."[10] Courts employ the "categorical approach," which "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic" crime.[11] The existence of a prior criminal conviction is not an element of a offense in the sense that we often view the term "element." For example, in the Armed Career Criminal Act (ACCA)[12] cases in which the concept of whether the statute of conviction is "divisible" has been developed, including *Mathis*, the Supreme Court has held that the fact of whether a prior conviction exists is not a question for the finder of fact.[13]

It should also be borne in mind that whether a person is a felon is an inquiry about status. Being denominated a felon under the law is not an act or omission (actus reus) accompanied by a state of mind (mens rea). Nor is the status of "felon" a "means" of committing another crime. It is a pre-existing legal designation. The Supreme Court's divisibility analysis has focused on distinguishing "elements" of an offense from "means" of committing an offense when a statute of conviction is "alternatively phrased."[14] That analysis has

---

[10] *Mathis*, 136 S. Ct. at 2248.

[11] *Id.*

[12] 18 U.S.C. § 924(e).

[13] *Mathis*, 136 S. Ct. at 2252 ("This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction.").

[14] *Id.* at 2249.

not been employed in resolving whether statutory alternatives, each of which concern only a question of law, are divisible. Whether a prior conviction is an offense that comes within subsection 1 of section 46.04(f) of the Texas Penal Code is purely a question of a law.

The Supreme Court has long recognized that the statute under which a prior conviction was obtained may contain alternatives. As noted, the divisibility inquiry resolves whether an alternative is an element of an offense or a means of committing an offense. For example, the decision in *Mathis* explains that in determining whether a statute is divisible, the "threshold inquiry" is "elements or means," and state court decisions may "answer the question."[15] If "a jury need not agree" on a factual matter, then that factual matter is not an element of the offense but a means of committing the offense.[16] The *Mathis* decision says that "'[e]lements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'"[17] Importantly, *Mathis* tells us that "[a]t a trial," elements "are what the jury must find beyond a reasonable doubt to convict the defendant," and "at a plea hearing, they are what the defendant necessarily admits when he pleads guilty."[18] The questions of fact for a Texas jury regarding a prior conviction in a felon-in-possession-of-a-firearm prosecution are whether there was in fact a prior conviction and whether the defendant currently in the dock was the defendant convicted in that prior proceeding.[19] This is typically proven

---

[15] *Id.* at 2256.

[16] *Id.*

[17] *Id.* at 2248 (quoting BLACK'S LAW DICTIONARY 634 (10th ed. 2014)).

[18] *Id.*

[19] *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007) ("To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction.").

by the introduction of a certified copy of the judgment in the prior case and identifying evidence such as fingerprints.[20]  This dichotomy between the respective roles of jury and judge regarding the existence of a predicate offense is similar, if not identical to that in federal courts.[21]  Once the existence of a prior conviction is established, whether that conviction was for a predicate offense is not a question of fact but a question of law.

The reasons given by the Supreme Court for utilizing the categorical approach to determine if a prior conviction may be used to increase punishment all indicate that the elements/means inquiry elucidated in *Mathis* is not a particularly good "fit" for, or is not fully applicable to, a statute of conviction such as Texas Penal Code section 46.04(f).  None of the reasons indicates that a court should be precluded from resolving the legal question of whether a prior conviction was for an offense defined in subsection (1) of 46.04(f).

---

[20] *See id.* at 921-22 ("No specific document or mode of proof is required to prove [the elements of a prior conviction].  There is no 'best evidence' rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document.  While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted.") (footnotes omitted); *Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986) ("We have consistently held that a prior conviction alleged for enhancement or a conviction as a part of prior criminal record of a defendant . . . may be established by certified copies of a judgment and a sentence and authenticated copies of the Texas Department of Correction records including fingerprints, supported by expert testimony identifying them as identical with known prints of the defendant.").

[21] *See, e.g.,* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases) §243.D, notes (2015) ("The determination whether the defendant has a prior conviction is for the jury. But, whether a conviction qualifies as a predicate offense under this statute is a legal question for the judge, not the jury."); *see also U.S. v. Elrawy*, 448 F.3d 309, 312 (5th Cir. 2006) (noting that whether a defendant's particular circumstance rendered him "illegally or unlawfully" in the United States based on statutory definitions was a legal issue of statutory interpretation, reviewed *de novo*).

No. 15-10615

The first reason articulated in *Mathis* is that the text of the ACCA focuses on "whether 'the defendant had been convicted of crimes falling within certain categories,' and not about what the defendant had actually done."[22] Whether a defendant is a felon within the meaning of one of the subsections of 46.04(f) focuses only on whether a defendant has been convicted of crimes falling within certain categories, not what the defendant actually did. As noted, courts, not a jury, decide whether a particular offense is a "felony" within the meaning of one or more of section 46.04(f)'s definitions.

The second reason given by the Supreme Court is that Sixth Amendment concerns would be implicated if a judge, rather than a jury, were to find facts that increased a maximum penalty.[23] The Supreme Court explained that the judge's role, "consistent with the Sixth Amendment," is to "determine what crime, with what elements, the defendant was convicted of."[24] A judge's role in applying section 46.04(f) is to determine if, based on the statutory elements of the prior offense and the prescribed punishment, the prior offense comes within subsection 1, 2, or 3.

The third reason expressed by the Supreme Court is that "an elements-focus avoids unfairness to defendants" because "statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary" and "a defendant may have no incentive to contest what does not matter under the law; to the contrary, he 'may have good reason not to.'"[25] This concern is not implicated by any of the alternative definitions under 46.04(f) because each simply sets forth the legal parameters that

---

[22] *Mathis*, 136 S. Ct. at 2252 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

[23] *Id.*

[24] *Id.*

[25] *Id.* at 2253.

22

determine whether a prior conviction comes within that statute's definition of a felony.

The disjunctive listings in Texas Penal Code section 46.04(f) are not of the same ilk as those that have been the focus of the Supreme Court's divisibility analyses.   But the reasons given by the Supreme Court for preventing a court from examining the underpinnings of a prior conviction support, rather than foreclose, application of the modified categorical approach to section 46.04(f).  A court, as a legal matter, may determine whether a prior conviction comes within subsection (1) of 46.04(f) without transgressing the reasons that the categorical approach is applied.  Uniformity and fairness are vindicated, not subverted, by determining if a prior conviction comes within subsection (1).  Section 46.04(f) is divisible.  Castillo-Rivera's conviction in 2009 was for a "felony" within the meaning of 46.04(f)(1), and that conviction is categorically an offense "described in" § 922(g)(1).

With regard to Castillo-Rivera's argument that the definition of a firearm in Texas Penal Code section 46.04 is broader than § 922(g)'s definition, I fully agree with the en banc court's reasoning and disposition.

No. 15-10615

JERRY E. SMITH, Circuit Judge, dissenting, joined by DENNIS, PRADO, GRAVES, HIGGINSON, and COSTA, Circuit Judges, in full; and joined except for footnote 2 by SOUTHWICK, Circuit Judge:

The baseball legend Yogi Berra is credited with the unintentionally humorous statement, "When you come to a fork in the road, take it."[1] By refusing, in a terse footnote, to address the rule of orderliness, this en banc majority declines to follow Yogi's sage advice. I respectfully dissent.[2]

The panel opinion,[3] two paragraphs long, relied on *Nieto Hernandez v. Holder*, 592 F.3d 681, 686 (5th Cir. 2009), which held that Section 46.04(a) of the Texas Penal Code "fits within 8 U.S.C. § 1101(a)(43)(E)(ii)'s definition of 'aggravated felony.'" Castillo-Rivera "urge[d] that this holding does not foreclose his overbreadth arguments because they were not considered in *Nieto Hernandez*."[4] The panel reasoned, to the contrary, that it was "bound" by the holding in *Nieto Hernandez* and could not address what it described as Castillo-Rivera's "new arguments."[5]

In his resourceful petition for rehearing en banc, the Federal Public Defender explained that "the Panel held . . . that the rule of orderliness extends to issues that *were not considered* by a prior panel. This is consistent with

---

[1] The saying is mistakenly attributed to Berra. *See* https://en.wikiquote.org/-wiki/Yogi_Berra. That common misunderstanding evokes recollection of a real "Yogiism". See *The Yogi book: I really didn't say everything I said!* (Workman Publishing 1997), p. 9.

[2] I join and agree with Judge Dennis's compelling dissent on the merits, which shows why the judgment of sentence should be vacated. Properly understood, Mr. Castillo-Rivera's Texas felon-in-possession conviction is not an aggravated felony for purposes of the sentencing guidelines. I write this separate dissent to examine the consequences of the majority's failure to address the rule of orderliness.

[3] *United States v. Castillo-Rivera*, 836 F.3d 464 (5th Cir. 2016).

[4] *Id.* at 464.

[5] *Id.* at 465.

No. 15-10615

*some* of this Court's . . . decisions . . . but inconsistent with others. It is also inconsistent with the Supreme Court's precedent about precedent." More precisely, the Federal Public Defender framed the procedural issue this way: "[D]oes a prior opinion foreclose arguments that were *waived* in the prior proceeding but *advanced* in the current case?"

The reference to "waived" arguments stems from the fact that in *Nieto Hernandez*, the defendant explicitly "concede[d] that his offense under . . . § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)'s definition of 'aggravated felony.'"[6] *Nieto Hernandez*, 592 F.3d at 686 n.6. The Federal Public Defender rightly reasoned that "Mr. Castillo-Rivera is not in privity with Mr. Nieto Hernandez, and there is no reason why he should be held to the same waiver that his predecessor selected."[7]

The court granted rehearing en banc[8] and sent the following notice:

Although the attorneys, in their briefs and oral argument, are free to address any matters raised in the case, the court is principally interested in the two issues presented in the petition for rehearing en banc, to-wit, (1) whether this court's rule of orderliness, properly understood, should extend to issues that were not considered by a prior panel and (2) whether the crime defined in Texas Penal Code § 46.04(a) fits within the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43)(E)(ii). In addition to the briefs of the parties, the court welcomes qualified submissions from amici curiae regarding either or both of these issues.

---

[6] Except for an interstate-commerce element, not relevant here.

[7] The en banc petition further explained,

This Court's decisions diverge when considering arguments or issues that were never *presented to* or *addressed by* the earlier panel. Are present-day judges bound by rulings that were never made in the past? Said another way, is one appellant's deliberate choice to waive certain issues binding as to all future appellants? One can find . . . Fifth Circuit panel opinions answering in the affirmative and . . . in the negative.

[8] *United States v. Castillo-Rivera*, 842 F.3d 862 (5th Cir. 2016) (per curiam).

25

No. 15-10615

The parties fully addressed both questions in their en banc briefs, and the Institute for Justice submitted a brief as *amicus curiae*, helpfully discussing the rule of orderliness from the civil side of the docket.

The issue is therefore fully joined, but the en banc majority declines Yogi's advice to take the fork in the road. The excuse is terse: "We do not reach this issue here, as it is not necessary to our disposition of Castillo-Rivera's case on the merits."

Strictly speaking, that is true. The rule of orderliness binds panels not to overrule earlier panels absent specified exceptions. Once a case is taken en banc, the court is free to overrule or modify the holdings of any panel (or, for that matter, a prior en banc decision). So any exposition by the en banc court on the rule of orderliness will always be *dictum*. By that bare reasoning, however, the rule of orderliness, however confusingly, erroneously, or contradictorily stated by panels past, can never be changed or its scope refined or reconciled. No panel can revisit it because of (guess what?) the rule of orderliness. And—so the argument goes—the en banc court should not do so, because it is, technically, unnecessary to the case at hand. Sort of a "Catch 22."[9]

That logic, albeit handy in the interest of expediency, undermines the supervisory responsibility of a federal court of appeals. At the panel level, the court has supervisory authority over the district courts, the lawyers as officers of the court, and the party litigants. It follows that at the en banc level, the court, if by no other justification than necessity, must address irregularities in the rule of orderliness, as the en banc Fourth Circuit carefully explained:

---

[9] Joseph Heller, *Catch 22* (Simon & Schuster 1961).

No. 15-10615

> The question of the binding effect of a panel opinion on subsequent panels is of utmost importance to the operation of this court and the development of the law in this circuit. Accordingly, before considering the merits of [this case], we first address this important procedural issue.

*McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2009) (en banc) (footnote omitted). That is so especially where the rule is applied in a manner so extreme as to bind parties to concessions made on questions of law in unrelated cases.

This court's supervisory power is so long- and well-established that citation is almost superfluous. A quick computer search produces myriad Fifth Circuit decisions mentioning our "supervisory authority" or "supervisory power[s]." This power includes authority over, *inter alia*, attorneys as officers of the court and district judges who can be removed from cases for good reason.[10] It follows naturally that this en banc court has ample supervisory authority to refashion the rule of orderliness that applies to our own panels.

"The supervisory power of the appellate courts has long been established."[11] "The variety of situations in which [the supervisory power] has been invoked defies any attempt to [define] which is at once comprehensive and accurate . . . . The sole common denominator . . . is a desire to maintain and develop standards of fair play in the federal courts . . . ."[12] "Through our super-

---

[10] *United States v. Jefferson*, 623 F.3d 227, 232 (5th Cir. 2010) (Clement, J.) ("[T]he United States Attorney remains subject to this court's general supervisory powers [over] frivolous . . . appeals."); *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 938 (5th Cir. 2006) (supervisory power to remove district judge from a case).

[11] *United States v. Hammond*, 605 F.2d 862, 864 n.4 (5th Cir. 1979) (Goldberg, J.) (on petition for rehearing).

[12] Note, *the Judge-Made Supervisory Power of the Federal Courts*, 53 GEO. L.J. 1050, 1050 (1965).

No. 15-10615

visory powers, we 'may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.'"[13] This can be, for example, "to protect the integrity of the judicial process."[14]

It would be a rogue panel or district court indeed that would defy an en banc refinement of the rule of orderliness, expressed in the exercise of supervision, on the shaky ground that it is *dictum*. The point is that the en banc majority should have tackled the issue in the interest of justice and regularity. Its failure to do that is error.

Beyond the majority's dereliction in abandoning the opportunity to refine this court's process in recognizing precedent, it is significant to examine the aggressive rule that the majority blesses, albeit *sub silentio*. We can leave for another day a general explication of how, in an ideal world, the rule of orderliness should read. For the case at hand, we need only consider the extreme formulation that the government urges and the majority accepts: that where, as here, a party in an unrelated case has chosen, for whatever reason, to concede a point of law, and that concession is included in a final holding or judgment, the concession is binding, as a matter of law, on all courts and parties in later cases.[15]

A party can concede a legal issue for divers reasons. He could be *pro se*

---

[13] *United States v. Williams*, 20 F.3d 125, 128 (5th Cir. 1994) (Goldberg, J.) (quoting *United States v. Hasting*, 461 U.S. 499, 505 (1983)).

[14] *Hammond*, 605 F.2d at 864.

[15] The same logic applies to the less obvious situation in which, in the prior case, an alternate theory or claim, although not explicitly abandoned or conceded, is never raised or even mentioned. The question there, as here, is whether a judgment denying relief on the claim that is addressed precludes, via the rule of orderliness, a later, unrelated party from making the additional claim that the first court never confronted.

28

and unaware of the consequences of his concession.  He could be represented by incompetent counsel.  His lawyer could decide that it is better to focus the court on other perceptively more winnable issues, especially in light of the length limitations for briefs.  The party might wish to avoid disclosing embarrassing facts to the judge or jury by conceding the issue to which those facts are relevant.  Or a particular issue might be especially expensive or time-consuming for him to develop.  The point, however, is that he and only he should suffer the consequences—or reap the benefits—of a decision to concede a point of law, and the concession should be understood as not establishing a legal precedent beyond the preclusive effect, as law of the case or res judicata, on the parties to that proceeding in the case at hand or subsequent litigation.

The government, however, urges that we adopt the most expansive possible reading of the rule of orderliness:  that a judgment that incorporates, by its silence, a legal issue that is conceded by a party—indeed, even a *pro se* party—will bind all future litigants in this court as though the issue had been contested, briefed, considered, and explicitly ruled on by the original panel.  The reader might suggest that that overstates the government's position.  But the government stood steadfast by that articulation of the rule of orderliness in answering questions at en banc oral argument.  Government counsel explained,

> The court is not bound to accept the concession of a party. . . . Panels of the court need to have the ability and the authority to give guidance and notwithstanding the fact that a litigant conceded an issue, the court does not have to accept that concession.  It can look beyond the concession and satisfy itself that the rule it is announcing is based in the law.  I think that is exactly what happened here with *Nieto Hernandez.*

Government counsel erred.  That is not at all what occurred in *Nieto Hernandez.*  The reader will search, in vain, the briefs of Nieto Hernandez and

No. 15-10615

the government for any discussion of the elements of Texas Penal Code § 46.04(a) or 18 U.S.C. § 922(g)(1).[16]   It naturally follows that the *Nieto Hernandez* panel made no explicit holding except that "[w]e hold that state felon-in-possession offenses, such as TPC § 46.04(a), need not have an interstate commerce element in order for the offense to be an offense 'described in' 18 U.S.C. § 922(g)(1)." *Nieto Hernandez*, 592 F.3d at 684.  The panel added, "We conclude, as we did in [*United States v. Garza*, 250 F. App'x 67, 71 (5th Cir. 2007) (per curiam)], that Nieto's offense under TPC § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)'s definition of 'aggravated felony.'"  At that point, the panel appended the following footnote:

> In his brief, Nieto concedes that his offense under TPC § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)'s definition of "aggravated felony" in every respect except for . . . an interstate commerce element. TPC § 46.04(a) has two elements that are relevant to this decision: (1) prior felony conviction and (2) possession of a firearm.  18 U.S.C. § 922(g)(1) has three relevant elements:  (1) prior felony conviction; (2) possession of a firearm; and (3) interstate commerce requirement. Nieto concedes in his brief that TPC § 46.04(a)'s two elements correspond with 18 U.S.C. § 922(g)(1)'s first two elements.

*Nieto Hernandez*, 592 F.3d at 686 n.6.

It is obvious that merely by acknowledging the defendant's concession, the *Nieto Hernandez* panel did not—in the words of government counsel quoted above—"look beyond the concession and satisfy itself that the rule it is announcing is based in the law."  Nonetheless, applying its extreme version of the rule of orderliness, the government, in its en banc brief, posits that "*Nieto-Hernandez* [*sic*] remains binding as to its holding that the substantive element of firearm possession is the same under Section 46.04 and Section 922(g)(1)."

---

[16] Except for the interstate-commerce element of the latter.

No. 15-10615

Application of the government's rule to Nieto Hernandez undermines the sound decision of the panel not to convert his concession into a holding. The issue was neither briefed nor argued. Traditionally in our adversarial system of justice, parties raise issues and give reasons for their respective points of view; judges examine those submissions and declare the winners based on the issues that are still contested. If a party fails to raise an issue or—for whatever reason—explicitly waives it, he suffers any consequences from that choice or from his inadvertence. In these circumstances, that is to Nieto Hernandez's detriment. The panel in his case did not decide the issue, and Castillo-Rivera should have been free to bring it and to have it decided as though no prior party had ever waived, abandoned, or failed to raise it. And that is the result that has obtained under the better understanding of this court's rule of orderliness.

That is, until now. By declining to take the fork in the road—that is, by refusing to address and decide one of the two questions on which the court decided to rehear this case en banc—the court, in effect, installs the government's articulation of the rule of orderliness in terms more specific and onerous than ever before, and does so without justification or explanation.

The government's position is, at once, both smug and convenient: smug, in that the government says that the matter is not even worthy of consideration, urging that this court "should stay the course and continue to trust the systems of review currently in place." In other words, "Move along, folks, nothing to see here."[17] And convenient, in that the rule it brandishes is rigged to favor itself and parties in a similar position.

---

[17] "An ironic or sarcastic phrase uttered by a person who feels that he/she has detected a hidden, usually unpleasant or sinister, deeper meaning of a story . . . [that he/she] wishes to conceal possibly to avoid upsetting the general public." http://www.urbandictionary.com/define.php?term=nothing%20to%20see%20here.

No. 15-10615

A rule of procedure that flatly bars parties from raising issues that were "decided" by default or inadvertence in prior, unrelated cases will almost always favor the government and disfavor the criminal defendant.[18] It is generally the defendant who raises defenses to prosecution and makes objections to enhancements and other aspects of the sentence. In an adversarial system, the defendant benefits from coming up with defenses that have never been ruled upon or new arguments that no previous defendant has ever articulated.

The government, on the other hand, benefits from having as many arguments as possible foreclosed by precedent, waiver, or abandonment.[19] How convenient it is for the government to say that a particular theory that was never adversarily tested is nonetheless unavailable to the instant defendant because some hapless defendant conceded that issue in the recent or distant past. That approach to precedent does indeed "stay the course and continue . . . the systems of review currently in place."

The question is whether the government sees its role as doing justice or winning at all cost. How is it fair to cut off resourceful attorneys from making good-faith arguments that no court has ever addressed, seriously considered, or decided? The majority does not say.

As the Institute for Justice comprehensively shows in its en banc brief as *amicus curiae*, this methodological flaw infects the arena of civil litigation,

---

[18] The same disadvantage accrues to a civil plaintiff who wishes to advance claims that an unrelated plaintiff, in a previous case, conceded or otherwise failed to advance. I address the civil side of the docket below.

[19] In its opposition to Castillo-Rivera's petition for rehearing en banc, the government summarizes its rule as this: "Arguments considered or not considered in the prior panel's resolution of the issue are irrelevant to a future panel because the issue has been decided." In its *amicus* brief, the Institute for Justice appropriately calls the government's rule "the sweeping precedent rule."

as well: "Parties should not be bound by the strategic decisions of past litigants to waive certain arguments. Judges should not be forced to choose between conducting enhanced, corrective en banc review versus grappling with un-briefed, unraised arguments in every opinion just to ensure that en banc correction will not be necessary." And more: "The constitutional rights of every American will be better protected if those rights are decided squarely on a case-by-case basis, rather than being implicitly ruled upon simply because they lurked in the background of a previous case."[20]

"The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011) (Alito, J.). The contrary notion—that waived or abandoned issues nevertheless should be deemed "decided" and binding—should be the easiest to discard because of its abject unfairness and its irrationality as a manner of decisionmaking by an adversarial, common-law court. Yet the majority declines to reject or even discuss it.

Refusing to take this fork in the road is the easy way, but not the right one. I respectfully dissent.

---

[20] And more still:

To be sure, litigants are bound by the *holdings* of courts in cases to which they were not parties. But that is a far cry from saying litigants can be bound by the *tactical choices* of individual parties with whom they are not in privity. A party can waive an argument for any number of reasons, from tactical considerations to ideological preferences to simple incompetence. To impose that decision on a party with a different view of tactics or ideology (or a different level of competence) deprives that party of important due-process rights.

No. 15-10615

JAMES L. DENNIS, Circuit Judge, joined by STEWART, Chief Judge, and SMITH, PRADO, and GRAVES, Circuit Judges, and joined with respect to Part I only by HIGGINSON and COSTA, Circuit Judges, dissenting:

Juan Castillo-Rivera provides two independently sufficient grounds establishing that Texas Penal Code (TPC) § 46.04 is broader than 18 U.S.C. § 922(g)(1) and that his prior conviction under TPC § 46.04 is therefore not an aggravated felony under the sentencing guidelines. First, he shows that the state law definition of "felony" is broader than the federal law definition. Second, he demonstrates that the state law definition of "firearm" is broader than the federal law definition. The majority opinion does not dispute Castillo-Rivera's contentions. Instead, it purports to rely on *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), in holding that Castillo-Rivera has failed to point to a state court decision that applies the state law in the manner for which he argues. In truth, however, the majority opinion relies on its own distorted version of *Duenas-Alvarez*'s rule, stretching it far beyond its original meaning and inserting additional requirements of the majority's own creation. I respectfully dissent.

I. The Definition of "Felony"

Castillo-Rivera's first contention is that the Texas offense of unlawful possession of a firearm by a felon, TPC § 46.04, is broader than its federal counterpart, 18 U.S.C. § 921(g), due to the state offense's much more expansive definition of "felony." Under TPC § 46.04(f):

> an offense under the laws of this state, another state, or the United States is . . . a felony if, at the time it is committed, the offense: (1) is designated by the law of this state as a felony; (2) contains all the elements of an offense designated by a law of the state as a felony; *or* (3) is punishable by confinement for one year or more in a penitentiary.

34

(emphasis added). The federal statute, 18 U.S.C. § 922(g)(1), makes the possession of a firearm unlawful only for those convicted of "a crime punishable by imprisonment for a term exceeding one year."

The majority opinion does not dispute that the state's definition of "felony" for purposes of TPC § 46.04 is broader by its plain language than the comparable terms of 18 U.S.C. § 922(g)(1).[1] But the majority opinion holds that Castillo-Rivera nevertheless fails to establish that the state's definition is broader than the federal one because he does not point to a state decision that illustrates that point. It cites *Duenas-Alvarez* for the proposition that a defendant must do so in all cases in order to establish a "realistic probability" that the state would apply its law in a way that falls outside of the scope of the relevant federal offense.[2] *Duenas-Alvarez* did not so hold.

In *Duenas-Alvarez*, the defendant argued that his prior California conviction for theft and unlawful driving or taking of a vehicle under California

---

[1] At one point, the majority opinion disingenuously characterizes Castillo-Rivera's undisputed construction of TPC § 46.04(f) as a "plausible interpretation of statutory text," Maj. Op. at 5, as if anyone could argue that Texas's elaborate definition of "felony" actually includes only crimes punishable by more than one year in prison. This is plainly false. Consider, for instance, the federal misdemeanor offense of simple possession of heroin or cocaine, 21 U.S.C. § 844, which is punishable by one year in prison for a first-time offender and "contains all the elements of" a Texas felony under Texas Health & Safety Code § 481.115(a) and therefore counts as a felony under TPC § 46.04(f)'s definition. Even the Government concedes in its brief on appeal that, "the definitions in subsection (f)(2) and (3) of TPC § 46.04 are broader than the federal definition."

[2] While relying exclusively on *Duenas-Alvarez*, the majority opinion also provides a "see also" citation to conclusory, postscript dicta in *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1693 (2013). The cursory statement in *Moncrieffe* is not the kind of detailed analysis of the law that we have found persuasive. *See United States v. Krohn*, 700 F.2d 1033, 1037 (5th Cir. 1983) (the Supreme Court "does not decide important questions of law by cursory dicta inserted in unrelated cases" (quoting *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 775 (1968)); *cf. Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (stating, "we give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court" and finding it persuasive "[b]ased on the depth of the Court's treatment of the issue").

Vehicle Code § 10851 was not a generic theft offense because: (1) the statute allows for the conviction of aiders and abettors; (2) California courts hold aiders and abettors liable for any crime that "naturally and probably" results from their intended crimes; and (3) California's judicial "natural and probable consequences" doctrine is broader than that of other jurisdictions in that it makes an aider-and-abettor defendant criminally liable for conduct that the defendant did not intend, "not even as a known or almost certain byproduct of the defendant's intentional acts." *Duenas-Alvarez*, 549 U.S. at 190–91. To that argument, the Supreme Court responded that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language." *Id.* at 193. Rather, an offender must show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender . . . must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.*

*Duenas-Alvarez* does not defeat Castillo-Rivera's claim. *Duenas-Alvarez* is concerned with the defendant who tries to demonstrate that a statute is overbroad by hypothesizing that it might be applied in some fanciful or unlikely way—through "the application of legal imagination." Castillo-Rivera is not relying on "the application of legal imagination" to establish that TPC § 46.04(a) is overbroad; he is relying on the statute's plain language. As the Ninth Circuit has explained:

> Where . . . a state statute explicitly defines a crime more broadly
> than the generic definition, no "legal imagination" is required to
> hold that a realistic probability exists that the state will apply its

statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text.

*United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (citation omitted) (quoting *Duenas-Alvarez*, 549 U.S. at 193).

This approach is consistent with the Supreme Court's instructions in *Taylor v. United States*, 495 U.S. 575 (1990), in which the Court established the categorical approach to determine whether a prior state offense constitutes a generic or other listed offense for purposes of federal law. *Taylor* directs that, when applying the categorical approach, we evaluate "the elements of the statute of conviction," i.e., the "statutory definition" of the prior offense. 495 U.S. at 601–02. Of course, state prosecutors' discretionary decisions whether or not to prosecute an offense under certain circumstances cannot add *statutory elements* to statutes that plainly do not contain those elements. *Cf. United States v. Aparicio-Soria*, 740 F.3d 152, 158 (4th Cir. 2014) (en banc) (holding that the Maryland crime of resisting arrest was not a crime of violence despite the lack of showing that anyone has ever been convicted of the offense without using force and observing, "It may be that Maryland prosecutors tend to charge too many offenders with resisting arrest when they could charge far more serious crimes, or it may be that we have a skewed universe of cases from the hundreds of resisting arrest convictions sustained each year. Either way, it does not really matter because the key is elements, not facts, and violent force is simply not an element of resisting arrest in Maryland." (citation and internal quotation marks omitted)).

Viewed in this context, it is clear that *Duenas-Alvarez* does not, as the majority opinion holds, require a defendant to disprove the inclusion of a statutory element that the statute plainly does not contain using a state case. *Taylor* itself illustrates this point. In that case, the Supreme Court considered

37

whether a defendant's prior Missouri convictions constituted generic burglary for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e). *Taylor*, 495 U.S. at 577–79. The Court noted that, at the time, Missouri had several different statutes criminalizing burglary, not all of which included all the elements of generic burglary. *Id.* at 578 n.1, 602. For instance, one of the relevant statutes prohibited the breaking and entering of a "building, booth, tent, boat, or railroad car," *id.* at 578 n.1 (citing MO. REV. STAT. § 560.070 (1969) (repealed)), whereas the generic offense pertains only to the entry of a "building or structure," *id.* at 599. The Court therefore remanded the case for a determination of which of the Missouri burglary statutes were the bases for the defendant's prior convictions. *Id.* at 602. Of crucial relevance here, the Supreme Court did not require the defendant to produce a Missouri state case to establish that the state's burglary statutes criminalized the breaking and entering of a boat or railroad car. *See id.*

We have followed suit. For instance, we did not require a state case in order to conclude, on plain error review, that a Florida statute criminalizing consensual sexual activity with a seventeen-year-old does not require use of force as an element of the offense. *See United States v. Chavez-Hernandez*, 671 F.3d 494, 499 (5th Cir. 2012). Similarly, we did not require a state case to establish that the relevant California statutory definition of "minor" as "a person under the age of 18 years" includes persons over the age of sixteen. *See United States v. Lopez-DeLeon*, 513 F.3d 472, 475 (5th Cir. 2008).

The majority opinion's broad holding that a defendant must in all cases point to a state case to illustrate the overbreadth of the state offense overrules a legion of cases while refusing to even acknowledge their existence. *See, e.g.*, *United States v. Martinez-Romero*, 817 F.3d 917, 923 (5th Cir. 2016) (concluding that Florida's kidnapping statute does not require substantial

interference with the victim's liberty because text of the statute included no reference to such a requirement); *Chavez-Hernandez*, 671 F.3d at 499 ("*On its face*, [the defendant's] offense does not qualify under the physical force portion of the definition because the Florida statute does not include the use of force as an element of the offense." (emphasis added)); *United States v. Najera-Mendoza*, 683 F.3d 627, 630 (5th Cir. 2012) (relying solely on the language of an Oklahoma kidnapping statute to conclude that it does not meet the generic definition of kidnapping); *United States v. Ortiz-Gomez*, 562 F.3d 683, 685–87 (5th Cir. 2009) (holding that a Pennsylvania "terroristic-threats" offense was not a "crime of violence" based on the language of the statute and without requiring a state decision on point); *United States v. Constante*, 544 F.3d 584, 585, 587 (5th Cir. 2008) (relying on the language of TPC § 30.02(a) to conclude that it does not contain as an element the necessary mens rea to constitute generic burglary); *Lopez-DeLeon*, 513 F.3d at 475; *United States v. Lopez-Salas*, 513 F.3d 174, 178 (5th Cir. 2008) (relying on the language of the relevant state statute to conclude that it does not include as an element the necessary mens rea to constitute a drug trafficking offense); *United States v. Ortega-Gonzaga*, 490 F.3d 393, 394 (5th Cir. 2007) (relying on the language of a California burglary statute to conclude that it did not require unprivileged entry and therefore did not constitute generic burglary); *see also United States v. Martinez*, 595 F. App'x 330, 334 (5th Cir. 2014) ("[W]e have found the realistic possibility requirement met without the benefit of a specific state decision on point in circumstances where the plain language of the statute clearly criminalized conduct outside of the [relevant generic] offense." (citing *Ortiz-Gomez*, 562 F.3d at 685–87)).

Nor does the majority opinion address or even acknowledge that its holding directly conflicts with holdings from the First, Third, Sixth, Ninth, and

No. 15-10615

Eleventh Circuits, all of which have recognized the limits of *Duenas-Alvarez*'s requirement. *See Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) ("Simply put, the plain terms of the Rhode Island drug schedules make clear that the Rhode Island offense covers at least one drug not on the federal schedules. That offense is simply too broad to qualify as a predicate offense under the categorical approach, whether or not there is a realistic probability that the state actually will prosecute offenses involving that particular drug."); *Vassell v. U.S. Attorney Gen.*, 839 F.3d 1352, 1362 (11th Cir. 2016) ("*Duenas-Alvarez* does not require this showing when the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition."); *Singh v. Attorney Gen.*, 839 F.3d 273, 286 (3d Cir. 2016) ("The BIA erred in conducting a 'realistic probability' inquiry" because "[h]ere, the elements of the crime of conviction are not the same as the elements of the generic federal offense" and "[t]he Supreme Court has never conducted a 'realistic probability' inquiry in such a case"); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where . . . a state statute explicitly defines a crime more broadly than the generic definition, no "legal imagination" is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime."); *Mendieta-Robles v. Gonzales*, 226 F. App'x 564, 572 (6th Cir. 2007) (the Government's legal-imagination argument fails because "it requires us to ignore the clear language" of the statute).

Thus, the majority opinion's unqualified rule that a defendant must in all cases point to a state court decision to illustrate the state statute's breadth misconstrues *Duenas-Alvarez,* directly conflicts with *Taylor*, and ignores both our established circuit precedent and the holdings of several of our sister

40

circuits. Castillo-Rivera has shown that TPC § 46.04's definition of "felony" is broader than the federal definition, and the state offense therefore covers conduct outside the scope of 18 U.S.C. § 922(g)(1). Accordingly, Texas's felon-in-possession-of-a-firearm offense is not "described in" 18 U.S.C. § 922(g)(1) and does not constitute an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(E)(ii); U.S.S.G. § 2L1.2 cmt. n.3(A).

II.  The Definition of "Firearm"

Castillo-Rivera's second contention is that the Texas felon-in-possession-of-a-firearm offense is broader than the federal one because of the more expansive state definition of "firearm," which can include even air guns. He notes that Texas law defines a "firearm" as "a device designed, made or adapted to expel a projectile through a barrel by using the energy generated by an *explosion or burning substance,*" TPC § 46.01(3) (emphasis added), whereas federal law defines "firearm," as relevant here, as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an *explosive,*" 18 U.S.C. § 921(a)(3) (emphasis added).

Here, Castillo-Rivera does not argue that the relative overbreadth of the state offense is plain from its text. He must therefore show a "realistic probability" that the state would apply the statute to conduct that is not covered by the federal offense, by pointing to "his own case or other cases in which the state courts in fact did apply the statute in the special manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193. He does just that.

Castillo-Rivera points to the Texas appellate court decision in *Boston v. State*, No. 05-96-00832-CR, 1998 WL 19938 (Tex. App. Jan. 22, 1998) (unpublished). In *Boston*, the defendant was convicted of aggravated assault of a peace officer after he pointed an air rifle at an officer. *Id.* at *1. To support his conviction, the State had to prove that the defendant's air rifle was a

41

"firearm" and therefore qualified as a "deadly weapon." *See id.* In determining whether the defendant's air rifle was a "firearm" for purposes of the defendant's offense, the court utilized the definition of "firearm" in TPC § 46.01(3).[3] *See id.* at \*2. The state court held that there was sufficient evidence to conclude that the defendant's air rifle constituted a "firearm" within the meaning of TPC § 46.01(3) because the release of compressed air constituted an "explosion," and it therefore affirmed his conviction.[4] *Id.* (under TPC § 46.01(3) "a firearm is any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion *or* burning substance. The firearms examiner testified that there is an explosion . . . whenever the compressed air in an air rifle is released" (emphasis in original)). Castillo-Rivera has thus pointed to a state case holding that the state law definition of "firearm" controlling his offense of conviction can include air rifles.

Unlike the Texas definition, the federal definition, which requires the action of an "explosive," 18 U.S.C. § 921(a)(3), "self-evidently does not include an air rifle . . . [that] operates by compressed air." *United States v. Crooker*, 608 F.3d 94, 96 (1st Cir. 2010); *see also United States v. Housholder*, No. 15-3146, 2016 WL 6595898, at \*2 (10th Cir. Nov. 8, 2016) (unpublished) (an air gun is not a firearm). Thus, the court in *Boston* actually applied a statutory

---

[3] TPC § 46.01(3)'s definition of "firearm" expressly applies only to weapons offenses, but Texas courts have long used this definition to determine whether a particular weapon counts as a "firearm" in the context of offenses involving the use of a "deadly weapon." *See, e.g.*, *DeAnda v. State*, 769 S.W.2d 522, 524 (Tex. Crim. App. 1989); *Vaughn v. State*, 600 S.W.2d 314, 315 (Tex. Crim. App. 1980).

[4] *Boston* is not the only Texas case to hold that an air gun or an air rifle can be a firearm. In *Shelton v. State*, 10 S.W.3d 689, 696 (Tex. App. 1999), another state appellate court applied the definition of firearm in TPC § 46.01(3) to reject a defendant's argument that his air gun was not a firearm and therefore affirmed the defendant's conviction for aggravated robbery.

provision that Castillo-Rivera challenges as overbroad, and it did so in a way that federal law would not have allowed; Mr. Boston is currently serving a protracted prison sentence as a direct result of that application.

Faced with *Boston*, the majority opinion again utilizes a mutated version of *Duenas-Alvarez* to save the day and hold that Castillo-Rivera fails to make the required showing. First, the majority opinion states that "*Boston* did not hold as a matter of law that the Texas definition of firearm includes air guns" but instead merely "made a sufficiency-of-the-evidence determination." Maj. Op. at 13. Thus, the majority opinion continues, "the court *did not decide* if an air gun is a firearm under TPC § 46.01." *Id.* (emphasis in original).

Respectfully, this reasoning is nonsensical. The *Boston* court concluded that "the evidence [was] legally sufficient to prove the air rifle used in this case was a firearm, as that term is defined in chapter 46," based on testimony that "there is an explosion . . . whenever the compressed air in an air rifle is released" and the statutory definition, under which a device qualifies as a firearm if it is designed to expel a projectile "by using the energy generated by an explosion *or* burning substance." 1998 WL 19938, at *2 (emphasis in original). This is a legal determination par excellence: the court concluded that TPC § 46.01's definition of "firearm" can include air guns. How else could the court find that the evidence was "legally sufficient"? *See id.* There is no requirement that the relevant state case hold that the particular circumstances the defendant suggests will always, "as matter of law," satisfy state law requirements; it simply has to illustrate that they can. *See Duenas-Alvarez*, 549 U.S. at 193.

Next, the majority opinion contends that *Boston* "had nothing to do with TPC § 46 whatsoever" and "did not deal with TPC § 46.04 at all." Maj. Op. at 13. This contention is disinguous. The *Boston* court's construction of TPC

No. 15-10615

§ 46.01(3)'s definition of "firearm" determined the outcome of that case, and that specific provision provides an integral part of Castillo-Rivera's statute of conviction, TPC § 46.04. *See* 1998 WL 19938, at *2. As previously explained, Texas courts commonly use this definition to determine whether a particular weapon counts as a "firearm" in the context of offenses involving the use of a "deadly weapon." *See, e.g.*, *DeAnda*, 769 S.W.2d at 524; *Vaughn*, 600 S.W.2d at 315.

The Supreme Court has required that the defendant point to a case "in which the state courts in fact did apply the statute in the special . . . manner for which he argues." *See Duenas-Alvarez*, 549 U.S. at 193. Castillo-Rivera points to a state appellate court case that held that TPC § 46.01(3)'s definition of "firearm," which governs his TPC § 46.04 offense, can include air rifles and therefore affirmed an air-rifle-wielding defendant's conviction. Nothing more is required. *See Castillo v. Holder*, 776 F.3d 262, 268 (4th Cir. 2015) ("[T]o the extent that the statutory definition of the prior offense has been interpreted by the state's appellate courts, that interpretation constrains our analysis of the elements of state law." (citation and internal quotation marks omitted)); *see also De Leon v. Lynch*, 808 F.3d 1224, 1230 (10th Cir. 2015) (similar).

Accordingly, the state statute's definition of "firearm" is broader than the federal definition, and the state offense therefore covers conduct outside the scope of the federal offense. For this reason, too, TPC § 46.04 is not "described in" 18 U.S.C. § 922(g)(1) and does not constitute an aggravated felony.

\*\*\*

TPC § 46.04 is broader than its federal counterpart for two independently sufficient reasons. The majority opinion ignores this and attempts to veil its misguided analysis with *Duenas-Alvarez*, but that case

44

simply does not support the majority opinion's holding.  I therefore respectfully dissent.

No. 15-10615

STEPHEN A. HIGGINSON, Circuit Judge, concurring in part and dissenting in part:

I concur in Section III.B of the majority opinion, in Section I of Judge Dennis's dissenting opinion, and in full in Judge Smith's dissenting opinion. Because "felony" under Texas Penal Code § 46.04 is defined more broadly than, hence not "defined in," 18 U.S.C. § 922(g)(1), I agree with Judge Dennis's dissenting opinion that Texas Penal Code § 46.04 cannot be an "aggravated felony" under the Sentencing Guidelines. Although I have applied the "realistic-probability" test announced in *Duenas-Alvarez*,[1] I agree with Judge Dennis's dissenting opinion that this added showing is unnecessary when a state statute is *facially broader* than its federal analog.

Fundamentally, this case highlights the incongruities inherent in the categorical approach. Congress did not intend to subject all *federal* felons in possession of a firearm to a recidivist sentencing enhancement but to include none from Texas. This paradoxical result—what scholars call the "windfall" problem—is a consequence of the judicially crafted categorical framework, which cannot be harmonized with congressional intent, and thus unsurprisingly continues to trouble courts, including the Supreme Court. *Compare Descamps v. United States*, 133 S. Ct. 2276 (2013), *with Mathis v. United States*, 136 S. Ct. 2243 (2016). Our ongoing struggle to apply the categorical approach while respecting the congressional purpose to enhance punishment for similar recidivists may justify Supreme Court intervention yet

---

[1] As the author of *United States v. Lara-Martinez*, I question how this decision stands for the rule that a defendant must *always* point to a state-court case as evidence of a state crime's broader sweep. 836 F.3d 472 (5th Cir. 2016). In *Lara-Martinez*, we addressed a state statute that was plainly *narrower* than the comparable categorical offense. *Id.* at 476 (contrasting the categorical crime of violence of "sexual abuse of a minor," where federal law defines "minor" as a person under 18, with Missouri's offense of "sexual misconduct involving a child," where Missouri defines "child" as a person under 15).

46

again. *See Mathis*, 136 S. Ct. at 2258 (Kennedy, J., concurring) ("[C]ontinued congressional inaction in the face of a system that each year proves more unworkable should require this Court to revisit its precedents in an appropriate case."). In the meantime, it is further unsurprising that courts will stretch the realistic-probability test of *Duenas-Alvarez* more and more to bridge the chasm between congressional intent and judicial doctrine.

The Supreme Court has not yet addressed the elasticity we face here: is the realistic-probability test of *Duenas-Alvarez* not only a means of interpreting an ambiguous state statute, but the rule in every case? In both *Mathis* and *Taylor*, however, the Court has at least suggested it's not. *Mathis*, 136 S. Ct. at 2250 (finding Iowa's burglary statute broader than generic burglary based only on its text without resort to Iowa caselaw); *Taylor v. United States*, 495 U.S. 575, 559-600 (1990) (finding Missouri's second-degree burglary statute broader than generic burglary based only on its text without resort to Missouri caselaw). I am apprehensive that the majority's absolute requirement in every case[2]—a rule Judge Dennis's dissenting opinion demonstrates is in tension with at least four other circuits and also conflicts with considerable precedent of our own[3]—additionally places an impractical burden on defendants without access to the required information. With most criminal prosecutions ending in plea agreements and putative charges driving

---

[2] "[A] defendant must point to an actual state case applying a state statute in a nongeneric manner, even where the state statute may be plausibly interpreted as broader on its face." Majority Op. at 8 n.3.

[3] *See also United States v. Najera-Mendoza*, 683 F.3d 627, 630 (5th Cir. 2012) (finding Oklahoma's kidnapping statute broader than generic kidnapping based only on its text without resort to Oklahoma caselaw); *United States v. Bonilla*, 524 F.3d 647, 654-55 (5th Cir. 2008) (finding New York's attempted manslaughter statute broader than generic manslaughter based only on its text without resort to New York caselaw); *United States v. Fierro-Reyna*, 466 F.3d 324, 326 (5th Cir. 2006) (finding Texas's aggravated assault statute broader than generic assault based only on its text without resort to Texas caselaw).

47

plea negotiations, the conduct states define as criminal may not be expressed in appellate-level decisions, and the evidence required to satisfy the majority's rule may thus be unavailable.