JAMES L. DENNIS, Circuit Judge,
joined by STEWART, Chief Judge, and SMITH, PRADO, and GRAVES, Circuit Judges, and joined with respect to Part I only by HIGGINSON and COSTA, Circuit Judges, dissenting:
Juan Castillo-Rivera provides two independently sufficient grounds establishing that Texas Penal Code (TPC) § 46.04 is broader than 18 U.S.C. § 922(g)(1) and that his prior conviction under TPC § 46.04 is therefore not an aggravated felony under the sentencing guidelines. First, he shows that the state law definition of “felony” is broader than the federal law definition. Second, he demonstrates that the state law definition of “firearm” is broader than the federal law definition. The majority opinion does not dispute Castillo-Rivera’s contentions. Instead, it purports to rely on Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007), in holding that Castillo-Rivera has failed to point to a state court decision that applies the state law in the manner for which he argues. In truth, however, the majority opinion relies on its own distorted version of Duenas-Alvarez ⅛ rule, stretching it far beyond its original meaning and inserting additional requirements of the majority’s own creation. I respectfully dissent.
*238 I. The Definition of “Felony”
Castillo-Rivera’s first contention is that the Texas offense of unlawful possession of a firearm by a felon, TPC § 46.04, is broader than its federal counterpart, 18 U.S.C. § 921(g), due to the state offense’s much more expansive definition of “felony.” Under TPC § 46.04(f):
an offense under the laws of this state, another state, or the United States is ... a felony if, at the time it is committed, the offense: (1) is designated by the law of this state as a felony; (2) contains all the elements of an offense designated by a law of the state as a felony; or (3) is punishable by confinement for one year or more in a penitentiary.
(emphasis added). The federal statute, 18 U.S.C. § 922(g)(1), makes the possession of a firearm unlawful only for those convicted of “a crime punishable by imprisonment for a term exceeding one year.”
The majority opinion does not dispute that the state’s definition of “felony” for purposes of TPC § 46.04 is broader by its plain language than the comparable terms of 18 U.S.C. § 922(g)(1).[1] But the majority opinion holds that Castillo-Rivera nevertheless fails to establish that the state’s definition is broader than the federal one because he does not point to a state decision that illustrates that point. It cites Duenas-Alvarez for the proposition that a defendant must do so in all cases in order to establish a “realistic probability” that the state would apply its law in a way that falls outside of the scope of the relevant federal offense.[2] Duenas-Alvarez did not so hold.
In Duenas-Alvarez, the defendant argued that his prior California conviction for theft and unlawful driving or taking of a vehicle under California Vehicle Code § 10851 was not a generic theft offense because: (1) the statute allows for the conviction of aiders and abettors; (2) California courts hold aiders and abettors liable for any crime that “naturally and probably” results from their intended crimes; and (3) California’s judicial “natural and probable consequences” doctrine is broader than that of other jurisdictions in that it makes an aider-and-abettor defendant criminally liable for conduct that the defendant did not intend, “not even as a known or almost certain byproduct of the *239 defendant’s intentional acts.” Duenas-Alvarez, 549 U.S. at 190-91, 127 S.Ct. 815. To that argument, the Supreme Court responded that “to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute’s language.” Id. at 193, 127 S.Ct. 815. Rather, an offender must show “a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the- generic definition of a crime. To show that realistic probability, an offender ... must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.” Id.
Duenas-Alvarez does not defeat Castillo-Rivera’s claim. Duenas-Alvarez is concerned with the defendant who tries to demonstrate that a statute is overbroad by hypothesizing that it might be applied in some fanciful or unlikely way — through “the application of legal imagination.” Castillo-Rivera is not relying on “the application of legal imagination” to establish that TPC § 46.04(a) is overbroad; he is relying on the statute’s plain language. As the Ninth Circuit has explained:
Where ... a state statute explicitly defines a crime more broadly than the generic definition, no “legal imagination” is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute’s greater breadth is evident from its text.
United States v. Grisel, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (citation omitted) (quoting Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815).
This approach is consistent with the Supreme Court’s instructions in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in which the Court established the categorical approach to determine whether a prior state offense constitutes a generic or other listed offense for purposes of federal law. Taylor directs that, when applying the categorical approach, we evaluate “the elements of the statute of conviction,” i.e., the “statutory definition” of the prior offense. 495 U.S. at 601-02, 110 S.Ct. 2143. Of course, state prosecutors’ discretionary decisions whether or not to prosecute an offense under certain circumstances cannot add statutory elements to statutes that plainly do not contain those elements. Cf. United States v. Aparicio-Soria, 740 F.3d 152, 158 (4th Cir. 2014) (en banc) (holding that the Maryland crime of resisting arrest was not a crime of violence despite the lack of showing that anyone has ever been convicted of the offense without using force and observing, “It may be that Maryland prosecutors tend to charge too many offenders with resisting arrest when they could charge far more serious crimes, or it may be that we have a skewed universe of cases from the hundreds of resisting arrest convictions sustained each year. Either way, it does not really matter because the key is elements, not facts, and violent force is. simply not an element of resisting arrest in Maryland.” (citation and internal quotation marks omitted)).
Viewed in this context, it is clear that Duenas-Alvarez does not, as the majority opinion holds, require a defendant to disprove the inclusion of a statutory element that the statute plainly does not contain using a state case. Taylor itself illustrates this point. In that case, the Supreme Court considered whether a defendant’s prior Missouri convictions constituted generic burglary for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e). Taylor, 495 U.S. at 577-79, 110 S.Ct. 2143. *240 The Court noted that, at the time, Missouri had several different statutes criminalizing burglary, not all of which included all the elements of generic burglary. Id. at 578 n.1, 602, 110 S.Ct. 2143. For instance, one of the relevant statutes prohibited the breaking and entering of a “building, booth, tent, boat, or railroad car,” id. at 578 n.1, 110 S.Ct. 2143 (citing MO. REV. STAT. § 560.070 (1969) (repealed)), whereas the generic offense pertains only to the entry of a “building or structure,” id. at 599, 110 S.Ct. 2143. The Court therefore remanded the case for a determination of which of the Missouri burglary statutes were the bases for the defendant’s prior convictions. Id. at 602, 110 S.Ct. 2143. Of crucial relevance here, the Supreme Court did not require the defendant to produce a Missouri state case to establish that the state’s burglary statutes criminalized the breaking and entering of a boat or railroad car. See id.
We have followed suit. For instance, we did not require a state case in order to conclude, on plain error review, that a Florida statute criminalizing consensual sexual activity with a seventeen-year-old does not require use of force as an element of the offense. See United States v. Chavez-Hernandez, 671 F.3d 494, 499 (5th Cir. 2012). Similarly, we did not require a state case to establish that the relevant California statutory definition of “minor” as “a person under the age of 18 years” includes persons over the age of sixteen. See United States v. Lopez-DeLeon, 513 F.3d 472, 475 (5th Cir. 2008).
The majority opinion’s broad holding that a defendant must in all cases point to a state case to illustrate the overbreadth of the state offense overrules a legion of cases while refusing to even acknowledge their existence. See, e.g., United States v. Martinez-Romero, 817 F.3d 917, 923 (5th Cir. 2016) (concluding that Florida’s kidnapping statute does not require substantial interference with the victim’s liberty because text of the statute included no reference to such a requirement); Chavez-Hernandez, 671 F.3d at 499 (“On its face, [the defendant’s] offense does not qualify under the physical force portion of the definition because the Florida statute does not include the use of force as an element of the offense.” (emphasis added)); United States v. Najera-Mendoza, 683 F.3d 627, 630 (5th Cir. 2012) (relying solely on the language of an Oklahoma kidnapping statute to conclude that it does not meet the generic definition of kidnapping); United States v. Ortiz-Gomez, 562 F.3d 683, 685-87 (5th Cir. 2009) (holding that a Pennsylvania “terroristic-threats” offense was not a “crime of violence” based on the language of the statute and without requiring a state decision on point); United States v. Constante, 544 F.3d 584, 585, 587 (5th Cir. 2008) (relying on the language of TPC § 30.02(a) to conclude that it does not contain as an element the necessary mens rea to constitute generic burglary); Lopez-DeLeon, 513 F.3d at 475; United States v. Lopez-Salas, 513 F.3d 174, 178 (5th Cir. 2008) (relying on the language of the relevant state statute to conclude that it does not include as an element the necessary mens rea to constitute a drug trafficking offense); United States v. Ortega-Gonzaga, 490 F.3d 393, 394 (5th Cir. 2007) (relying on the language of a California burglary statute to conclude that it did not require unprivileged entry and therefore did not constitute generic burglary); see also United States v. Martinez, 595 Fed.Appx. 330, 334 (5th Cir. 2014) (“[W]e have found the realistic possibility requirement met without the benefit of a specific state decision on point in circumstances where the plain language of the statute clearly criminalized conduct outside of the [relevant generic] offense.” (citing Ortiz-Gomez, 562 F.3d at 685-87)).
*241 Nor does the majority opinion address or even acknowledge that its holding directly conflicts with holdings from the First, Third, Sixth, Ninth, and Eleventh Circuits, all of which have recognized the limits of Duenas-Alvarez ’s requirement. See Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017) (“Simply put, the plain terms of the Rhode Island drug schedules make clear that the Rhode Island offense covers at least one drug not on the federal schedules. That offense is simply too broad to qualify as a predicate offense under the categorical approach, whether or not there is a realistic probability that the state actually will prosecute offenses involving that particular drug.”); Vassell v. U.S. Attorney Gen., 839 F.3d 1352, 1362 (11th Cir. 2016) (“Duenas-Alvarez does not require this showing when the statutory language itself, rather than ‘the application of legal imagination’ to that language, creates the ‘realistic probability’ that a state would apply the statute to conduct beyond the generic definition.”); Singh v. Attorney Gen., 839 F.3d 273, 286 (3d Cir. 2016) (“The BIA erred in conducting a ‘realistic probability’ inquiry” because “[h]ere, the elements of the crime of conviction are not the same as the elements of the generic federal offense” and “[t]he Supreme Court has never conducted a ‘realistic probability’ inquiry in such a case”); United States v. Grisel, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (“Where ... a state statute explicitly defines a crime more broadly than the generic definition, no “legal imagination” is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime.”); Mendieta-Robles v. Gonzales, 226 Fed.Appx. 564, 572 (6th Cir. 2007) (the Government’s legal-imagination argument fails because “it requires us to ignore the clear language” of the statute).
Thus, the majority opinion’s unqualified rule that a defendant must in all cases point to a state court decision to illustrate the state statute’s breadth misconstrues Duenas-Alvarez, directly conflicts with Taylor, and ignores both our established circuit precedent and the holdings of several of our sister circuits. Castillo-Rivera has shown that TPC § 46.04’s definition of “felony” is broader than the federal definition, and the state offense therefore covers conduct outside the scope of 18 U.S.C. § 922(g)(1). Accordingly, Texas’s felon-in-possession-of-a-firearm offense is not “described in” 18 U.S.C. § 922(g)(1) and does not constitute an aggravated felony. See 8 U.S.C. § 1101(a)(43)(E)(ii); U.S.S.G. § 2L1.2 cmt. n.3(A).
II. The Definition of “Firearm”
Castillo-Rivera’s second contention is that the Texas felon-in-possession-of-a-firearm offense is broader than the federal one because of the more expansive state definition of “firearm,” which can include even air guns. He notes that Texas law defines a “firearm” as “a device designed, made or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance,” TPC § 46.01(3) (emphasis added), whereas federal law defines “firearm,” as relevant here, as “any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive,” 18 U.S.C. § 921(a)(3) (emphasis added).
Here, Castillo-Rivera does not argue that the relative overbreadth of the state offense is plain from its text. He must therefore show a “realistic probability” that the state would apply the statute to conduct that is not covered by the federal offense, by pointing to “his own case or other cases in which the state courts in fact did apply the statute in the special *242 manner for which he argues.” Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815. He does just that.
Castillo-Rivera points to the Texas appellate court decision in Boston v. State, No. 05-96-00832-CR, 1998 WL 19938 (Tex. App. Jan. 22, 1998) (unpublished). In Boston, the defendant was convicted of aggravated assault of a peace officer after he pointed an air rifle at an officer. Id. at *1. To support his conviction, the State had to prove that the defendant’s air rifle was a “firearm” and therefore qualified as a “deadly weapon.” See id. In determining whether the defendant’s air rifle was a “firearm” for purposes of the defendant’s offense, the court utilized the definition of “firearm” in TPC § 46.01(3).[3] See id. at *2. The state court held that there was sufficient evidence to conclude that the defendant’s air rifle constituted a “firearm” within the meaning of TPC §• 46.01(3) because the release of compressed air constituted an “explosion,” and it therefore affirmed his conviction.[4] Id. (under TPC § 46.01(3) “a firearm is any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance. The firearms examiner testified that there is an explosion ... whenever the compressed air in an air rifle is released” (emphasis in original)). Castillo-Rivera has thus pointed to a state case holding that the state law definition of “firearm” controlling his offense of conviction can include air rifles.
Unlike the Texas definition, the federal definition, which requires the action of an “explosive,”- 18 U.S.C. § 921(a)(3), “self-evidently does not include an air rifle ... [that] operates by compressed air.” United States v. Crooker, 608 F.3d 94, 96 (1st Cir. 2010); see also United States v. Housholder, 664 Fed.Appx. 720, 722-23 (10th Cir. 2016) (unpublished) (an air gun is not a firearm). Thus, the court in Boston actually applied a statutory provision that Castillo-Rivera challenges as overbroad, and it did so in a way that federal law would not have allowed; Mr. Boston is currently serving a protracted prison sentence as a direct result of that application.
Faced with Boston, the majority opinion again utilizes a mutated version of Due-nds-Alvarez to save the day and hold that Castillo-Rivera fails to make the required showing. First, the majority opinion states that “Boston did not hold as a matter of law that the Texas definition of firearm includes air guns” but instead merely “made a sufficiency-of-the-evidence determination.” Maj. Op. at 226. Thus, the majority opinion continues, “the court did not decide if an air gun is a firearm under TPC § 46.01.” Id. (emphasis in original).
Respectfully, this reasoning is nonsensical. The Boston court concluded that “the evidence [was] legally sufficient to prove the air rifle used in this case was a firearm, as that term is defined in chapter 46,” based on testimony that “there is an explosion ... whenever the compressed air in an air rifle is released” and the statutory *243 definition, under which a device qualifies as a firearm if it is designed to expel a projectile “by using the energy generated by an explosion or burning substance.” 1998 WL 19938, at *2 (emphasis in original). This is a legal determination par excellence: the court concluded that TPC § 46.01’s definition of “firearm” can include air guns. How else could the court find that the evidence was “legally sufficient”? See id. There is no requirement that the relevant state case hold that the particular circumstances the defendant suggests will always, “as matter of law,” satisfy state law requirements; it simply has to illustrate that they can. See Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815.
Next, the majority opinion contends that Boston “had nothing to do with TPC § 46 whatsoever” and “did not deal with TPC § 46.04 at all.” Maj. Op. at 226. This contention is disingenuous. The Boston court’s construction of TPC § 46.01(3)’s definition of “firearm” determined the outcome of that case, and that specific provision provides an integral part of Castillo-Rivera’s statute of conviction, TPC § 46.04. See 1998 WL 19938, at *2. As previously explained, Texas courts commonly use this definition to determine whether a particular weapon counts as a “firearm” in the context of offenses involving the use of a “deadly weapon.” See, e.g., DeAnda, 769 S.W.2d at 524; Vaughn, 600 S.W.2d at 315.
The Supreme Court has required that the defendant point to a case “in which the state courts in fact did apply the statute in the special ... manner for which he argues.” See Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815. Castillo-Rivera points to a state appellate court case that held that TPC § 46.01 (3)’s definition of “firearm,” which governs his TPC § 46.04 offense, can include air rifles and therefore affirmed an air-rifle-wielding defendant’s conviction. Nothing more is required. See Castillo v. Holder, 776 F.3d 262, 268 (4th Cir. 2015) (“[T]o the extent that the statutory definition of the prior offense has been interpreted by the state’s appellate courts, that interpretation constrains our analysis of the elements of state law.” (citation and internal quotation marks omitted)); see also De Leon v. Lynch, 808 F.3d 1224, 1230 (10th Cir. 2015) (similar).
Accordingly, the state statute’s definition of “firearm” is broader than the federal definition, and the state offense therefore covers conduct outside the scope of the federal offense. For this reason, too, TPC § 46.04 is not “described in” 18 U.S.C. § 922(g)(1) and does not constitute an aggravated felony.
* * *
TPC § 46.04 is broader than its federal counterpart for two independently sufficient reasons. The majority opinion ignores this and attempts to veil its misguided analysis with Duenas-Alvarez, but that case simply does not support the majority opinion’s holding. I therefore respectfully dissent.

. At one point, the majority opinion disingenuously characterizes Castillo-Rivera’s undisputed construction of TPC § 46.04(f) as a “plausible interpretation of statutory text,” Maj. Op. at 222, as if anyone could argue that Texas’s elaborate definition of "felony” actually includes only crimes punishable by more than one year in prison. This is plainly false. Consider, for instance, the federal misdemeanor offense of simple possession of heroin or cocaine, 21 U.S.C. § 844, which is punishable by one year in prison for a first-time offender and "contains all the elements of” a Texas felony under Texas Health & Safety Code § 481.115(a) and therefore counts as a felony under TPC § 46.04(f)’s definition. Even the Government concedes in its brief on appeal that, "the definitions in subsection (f)(2) and (3) of TPC § 46.04 are broader than the federal definition.”

. While relying exclusively on Duenas-Alvarez, the majority opinion also provides a "see also” citation to conclusory, postscript dicta in Moncrieffe v. Holder, - U.S. -, 133 S.Ct. 1678, 1693, 185 L.Ed.2d 727 (2013). The cursory statement in Moncrieffe is not the kind of detailed analysis of the law that we have found persuasive. See United States v. Krohn, 700 F.2d 1033, 1037 (5th Cir. 1983) (the Supreme Court "does not decide important questions of law by cursory dicta inserted in unrelated cases” (quoting In re Permian Basin Area Rate Cases, 390 U.S. 747, 775, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968))); cf. Gearlds v. Entergy Servs., Inc., 709 F.3d 448, 452 (5th Cir. 2013) (stating, "we give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court” and finding it persuasive "[biased on the depth of the Court’s treatment of the issue”).

. TPC § 46.01(3)’s definition of "firearm” expressly applies only to weapons offenses, but Texas courts have long used this definition to determine whether a particular weapon counts as a "firearm” in the context of offenses involving the use of a "deadly weapon.” See, e.g., DeAnda v. State, 769 S.W.2d 522, 524 (Tex. Crim. App. 1989); Vaughn v. State, 600 S.W.2d 314, 315 (Tex. Crim. App. 1980).

. Boston is not the only Texas case to hold that an air gun or an air rifle can be a firearm. In Shelton v. State, 10 S.W.3d 689, 696 (Tex. App. 1999), another state appellate court applied the definition of firearm in TPC § 46.01(3) to reject a defendant's argument that his air gun was not a firearm and therefore affirmed the defendant’s conviction for aggravated robbery.